Andrew WHITE, Plaintiff Below, Appellant,

v.

Milan PANIC, Weldon B. Jolley, Thomas H. Lenagh, Roberts A. Smith, Richard W. Star, Andrei Kozyrev, Norman Barker, Jr., Birch E. Bayh, Jr., Alan F. Charles, Adam Jerney, Stephen D. Moses, Roger Guillemin, Jean–Francois Kurz, Charles T. Manatt, Michael Smith and ICN Pharmaceuticals, Inc., Defendants Below, Appellees.

No. 66,2000.

Supreme Court of Delaware.

Submitted: July 19, 2001.

Decided: Oct. 3, 2001.

Joseph A. Rosenthal, of Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington; Irving Bizar (argued), of Bizar Martin & Taub, LLP, New York City, of counsel, for Appellant.

Jesse A. Finkelstein, and Srinivas M. Raju, of Richards, Layton & Finger, P.A., Wilmington; Warren L. Dennis (argued), Gregg M. Mashberg, and Michael C. Hochman, of Proskauer Rose LLP, Washington, D.C., of counsel, for Director Appellees.

Josy W. Ingersoll, and Christian Douglas Wright, of Young, Conaway, Stargatt & Taylor, LLP, Wilmington; Laurence P. Eagel (argued) of Bragar Wexler Eagel & Marganstern, LLP, New York City; Clifford R. Saffron, of ICN Pharmaceuticals, Inc., New York City, of counsel, for Appellee ICN Pharmaceuticals, Inc.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER and STEELE, Justices, constituting the Court en Banc.

VEASEY, Chief Justice:

In this appeal, we consider whether a complaint in a derivative action presents sufficient particularized factual allegations to create a reasonable doubt that the director defendants were disinterested and independent or that their conduct was protected by the business judgment rule. The complaint alleges, based almost entirely on facts derived from an investigative report in a news magazine, that the board of directors affirmatively refused to take any measures to stop or sanction sexual misconduct by a corporate officer that allegedly subjected the corporation to potential civil liability and expense.

We agree with the holding of the Court of Chancery that the complaint does not allege sufficient particularized facts to raise a reasonable doubt that the board's actions were the product of valid business judgment. The facts alleged in the complaint do not support a reasonable inference that the board knew about the officer's misconduct but intentionally decided not to sanction the officer or to curb future misconduct. Similarly, there are insufficient facts alleged in the complaint to support an inference that the board acted in bad faith or wasted corporate assets by using corporate funds to pay settlements and expenses connected with the harassment suits.

It is not within our province to express a view on the morality of the alleged conduct of the corporate officer or the business decisions of the board in its handling of that conduct. Our role is to review de novo the legal sufficiency of the complaint in accordance with the standard of review established in our jurisprudence.[1] Applying that standard we find that the allegations in this complaint do not meet the heightened pleading requirements to excuse pre-suit demand in derivative suits as required by Chancery Rule 23.1. That rule is designed to implement the principle that the cause of action belongs to the corporation, not the stockholder plaintiff and it is the board (unless a majority of its members are disqualified)

---

1. *Brehm v. Eisner,* Del.Supr., 746 A.2d 244, 253–54 (2000) (*"Disney"*).

that must decide whether to pursue the corporation's claim. The claim having been dismissed with prejudice for pleading deficiencies, the plaintiff now seeks from this Court the right to amend his complaint and to pursue avenues to develop the necessary facts.

Because this case does not present any novel legal issues and does not require us to clarify or to change our jurisprudence relating to the pleading requirements under Chancery Rule 23.1, the general rule against permitting plaintiffs to amend their complaint after a dismissal and an unsuccessful appeal applies. Accordingly, we affirm the judgment of the Court of Chancery dismissing the complaint with prejudice.

## Facts

On July 6, 1998, *U.S. News & World Report* published a cover story [2] describing several sexual harassment suits filed against Milan Panic, the founder and Chief Executive Officer of ICN Pharmaceuticals, Inc. ("ICN").[3] ICN is an international enterprise engaged in the manufacture and marketing of pharmaceutical products. Based principally on the facts reported in the *U.S. News* article, Andrew White, an ICN stockholder, filed a derivative suit in the Court of Chancery naming the individual directors on the ICN board as defendants [4] and naming ICN as a nominal defendant.

■■■ The following summarizes the facts alleged in the derivative complaint.[5]

---

**2.** *See* Miriam Horn, *Sex and the CEO,* U.S. News and World Report (July 6, 1998).

**3.** Panic is also Chairman of the Board of Directors of ICN. He was President of ICN until 1997.

**4.** The ICN board was comprised of fifteen directors during the relevant period: Milan Panic, Weldon B. Jolley, Thomas H. Lenagh, Roberts A. Smith, Richard W. Starr, Andrei Kozyrev, Norman Barker, Jr., Birch E. Bayh, Alan F. Charles, Adam Jerney, Stephen D. Moses, Roger Guillemin, Jean–Francois Kurz, Charles T. Manatt, and Michael Smith. Of these, only Panic and Adam Jerney, the Chief Operating Officer, were ICN employees at the time the complaint was filed.

**5.** Because the complaint relied almost exclusively on the *U.S. News* article, the Court of Chancery deemed the entire article part of the complaint and relied on assertions in the article in deciding the motion to dismiss. *See White v. Panic,* Del. Ch., C.A. No. 16800, 2000 WL 85046 (January 19, 2000) (Mem.Op.), Mem. Op. at 2 n. 1. For example, the court noted the board's formation of a special committee, its request for an investigation by ICN's outside counsel, and its formation of a grievance committee, which advised the board to " 'take a much more active approach in enforcing its sexual harassment procedures and policies.' " *See id.* at 6, 22, 2000 WL

85046. As a general rule, the Court of Chancery must confine its consideration on a motion to dismiss to the face of the complaint. *See In re Santa Fe Pacific Corp. Shareholder Litigation,* Del.Supr., 669 A.2d 59, 68 (1995) ("Generally, matters outside the pleadings should not be considered in ruling on a motion to dismiss."). Thus, the court may not employ assertions in documents outside the complaint to decide issues of fact against the plaintiff without the benefit of an appropriate factual record. *Vanderbilt Income and Growth Associates, L.L.C. v. Arvida/JMB Managers, Inc.,* Del.Supr., 691 A.2d 609, 613 (1996) (holding that the trial court may consider documents submitted by the defendant on a motion to dismiss solely for a non-hearsay purpose and therefore may not rely on factual assertions in the documents for the truth of the matter asserted). In the present case, however, the plaintiff affirmatively placed the facts in the article before the Court of Chancery by attaching the full text of the article to his answering brief opposing the defendants' motion to dismiss. By doing so without any express limitation on the court's use of the document, the plaintiff acquiesced in the court's consideration of the entire article in deciding the motion to dismiss. *See Midland Food Services, LLC v. Castle Hill Holdings V, LLC,* Del.Supr., No. 509, 1999, 782 A.2d 265, Veasey, C.J. (2001) (ORDER) ("To the extent that appellants had claimed

According to the complaint, four women have filed suits against ICN alleging that Panic "repeatedly propositioned or groped them and rewarded or punished female employees based on whether they complied or complained."[6] ICN has apparently disclosed publicly that it has paid a total of $3,500,000 to settle eight harassment suits against Panic.[7] The complaint does not provide any details about the nature of the legal claims against ICN, the amount of each settlement, or the status of pending litigation. There are also no allegations that Panic has ever been found liable for sexual harassment or has conceded that he engaged in any misconduct.

The plaintiff posits that, although ICN officials knew about Panic's alleged misconduct as early as 1992,[8] the board made a concerted effort to protect Panic by using corporate funds to settle the suits against Panic and ICN and by implementing policies designed, at least in part, to minimize exposure of Panic's alleged activities. To support the assertion that the board knew of Panic's behavior, one of the director defendants in this case, Norman Barker, Jr., is quoted in the complaint as saying: "[T]he problem with Panic is he can't keep it in his pants." Allegedly to avoid unwanted publicity about Panic's

conduct, ICN has implemented a policy requiring employees to submit all grievances to sealed arbitration. According to the complaint, Panic and other directors have conceded in deposition testimony that the board has never sanctioned Panic for the alleged misconduct.

The board has also not required that Panic reimburse ICN for the corporate funds expended in defending and settling the suits based on his alleged misconduct. To the contrary, the plaintiff alleges that the board approved a short-term loan from ICN to Panic so that he could pay a $3,500,000 settlement in a paternity suit. With the approval of the board, ICN then guaranteed a loan from a third-party bank to Panic (as a replacement for the short-term loan) and deposited $3,600,000 from the corporate treasury as collateral for the loan. In return, Panic pledged 150,000 stock options with an exercise price of $15.17 per share.[9]

Panic and the board moved to dismiss the complaint under Chancery Rule 23.1 on the ground that the plaintiff did not file a demand on the board before proceeding with his derivative suit and did not show that demand was excused as futile. The Court of Chancery held that demand was not excused in this case because the partic-

---

on appeal that the Vice Chancellor improperly considered matters outside the pleadings on a motion to dismiss under Chancery Rule 12(b)(6), we find that appellants expressly acquiesced in the consideration of the questioned matters and abandoned their initial contention that these matters could not be considered on a motion to dismiss."). In any event, as explained below, we have concluded that the complaint fails on its face.

6. In addition, five female employees—including the four who sued Panic and ICN—have also filed discrimination charges with the California Department of Fair Housing and Employment.

7. Confusingly, the complaint also states that "[i]n one instance, Panic was involved in a

paternity suit brought by a former employee which was settled for more than $3,500,000."

8. The source of this date is unclear from the face of the complaint, but the *U.S. News* article asserts that a female ICN employee complained about Panic's conduct to a corporate officer at some point in 1992.

9. The complaint does not indicate the value of these options, but alleges that "Panic has boasted that he pays only a fraction of the interest on his loan." The complaint also alleges that the board actually "rewarded" Panic despite his misconduct by awarding him a bonus of $1,800,000 in April 1998.

ularized factual allegations in the complaint do not raise a reasonable doubt that the board was disinterested or that the board's actions were the product of valid business judgment.[10] The court therefore granted the defendants' motion to dismiss the complaint with prejudice. The plaintiff now appeals the Court of Chancery's dismissal with prejudice of his complaint.

### Scope of Review

We review de novo the decision of the Court of Chancery to dismiss a derivative suit under Rule 23.1.[11] At the motion to dismiss stage of the litigation, "[p]laintiffs are entitled to all reasonable factual inferences that logically flow from the particularized facts alleged, but conclusory allegations are not considered as expressly pleaded facts or factual inferences."[12] Of course, we "need not blindly accept as true all allegations, nor must [we] draw all inferences from them in

plaintiffs' favor unless they are reasonable inferences."[13]

The plaintiff argues that the Court of Chancery erred by applying too strict a pleading standard in its interpretation of the complaint in ruling on the defendants' motion to dismiss. Based on its conclusion that the plaintiff did not conduct a sufficient investigation before filing the derivative action at issue here, the Court of Chancery explicitly refused to "give a broad reading to the facts alleged in the complaint" and declined to "infer from them the existence of other facts that would have been proven or disproven by a further pre-suit investigation."[14] Relying on this statement, the plaintiff contends that the court erroneously imposed a heightened pleading burden when it decided the defendants' motion to dismiss.

The Court of Chancery was certainly justified in chastising the plaintiff for his lackluster pre-suit efforts.[15] Nevertheless, a perceived deficiency in the

---

**10.** See *White v. Panic*, Del. Ch., C.A. No. 16800, 2000 WL 85046 (January 19, 2000) (Mem.Op.).

**11.** See *Disney*, 746 A.2d at 253.

**12.** *Id.* at 255; see also *Lewis v. Vogelstein*, Del. Ch., 699 A.2d 327, 338 (1997) ("Where under any state of facts consistent with the factual allegations of the complaint the plaintiff would be entitled to a judgment, the complaint may not be dismissed as legally defective."). In this context, "well-pleaded allegations" include specific allegations of fact and conclusions supported by specific allegations of fact. See *Solomon v. Pathe Communications Corp.*, Del.Supr., 672 A.2d 35, 38 (citing *In re Tri–Star Pictures, Inc., Litig.*, Del.Supr., 634 A.2d 319, 326 (1993)).

**13.** *Grobow v. Perot*, Del.Supr., 539 A.2d 180, 187 (1988) (footnote omitted).

**14.** *White*, Mem. Op. at 14, 2000 WL 85046.

**15.** We have emphasized on several occasions that stockholder "[p]laintiffs may well have the 'tools at hand' to develop the necessary

facts for pleading purposes," including the inspection of the corporation's books and records under 8 *Del. C.* § 220. *Disney*, 746 A.2d at 266–67; see also *Rales v. Blasband*, Del. Supr., 634 A.2d 927, 930 n. 10 (1993) ("Although derivative plaintiffs may believe it is difficult to meet the particularization requirement of *Aronson* because they are not entitled to discovery to assist their compliance with Rule 23.1, ... they have many avenues available to obtain information bearing on the subject of their claims. For example, there is a variety of public sources from which the details of a corporate act may be discovered, including the media and governmental agencies such as the Securities and Exchange Commission. In addition, a stockholder who has met the procedural requirements and has shown a specific proper purpose may use the summary procedure embodied in 8 *Del. C.* § 220 to investigate the possibility of corporate wrongdoing."); *Security First Corp. v. U.S. Die Casting and Development Co.*, Del. Supr., 687 A.2d 563, 567 n. 3 (1997) (same).

plaintiff's pre-suit investigation would not permit the Court of Chancery, or this Court on appeal, to limit its reading of the complaint or to deny the plaintiff the benefit of reasonable inferences from well-pleaded factual allegations.[16] If the plaintiff fails to undertake appropriate investigation before filing suit, the plaintiff will simply have fewer "particularized facts" from which the court may draw reasonable inferences.

■ Of course, it is not clear from the statement in the Court of Chancery's opinion that the Court actually limited its interpretation of the complaint in a manner inconsistent with the accepted standards described above. In any event, we find that the trial court's limitation was, at most, harmless error because this Court must "decide *de novo* whether the Complaint was properly dismissed for failure to set forth particularized facts to support the plaintiff['s] claim that demand is excused." [17]

### Application of Chancery Rule 23.1 Pleading Requirements

■ In most situations, the board of directors has sole authority to initiate or to refrain from initiating legal actions asserting rights held by the corporation.[18] This authority is subject to the limited exception, defined in Chancery Rule 23.1, permitting stockholders to initiate a derivative suit to enforce unasserted rights of the corporation without the board's approval where they can show either that the board wrongfully refused the plaintiff's pre-suit demand to initiate the suit or, if no demand was made, that such a demand would be a futile gesture and is therefore excused.[19]

■ Where, as in this case, a stockholder plaintiff initiates a derivative action without making a pre-suit demand on the board, Rule 23.1 requires that the complaint allege with particularity the reasons for the plaintiff's failure to demand action

---

**16.** *Cf. Disney*, 746 A.2d at 255 ("Plaintiffs *are entitled* to all reasonable factual inferences that logically flow from the particularized facts alleged . . . .") (emphasis added).

**17.** *Id.* at 254.

**18.** *See* 8 *Del. C.* § 141(a) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors, except as may be otherwise provided in this chapter or in its certificate of incorporation."); *Aronson v. Lewis*, Del.Supr., 473 A.2d 805, 811–12 (1984) ("[T]he demand requirement is a recognition of the fundamental precept that directors manage the business and affairs of the corporation."); *Grimes v. Donald*, Del.Supr., 673 A.2d 1207, 1215 (1996) ("If a claim belongs to the corporation, it is the corporation, acting through its board of directors, which must make the decision whether or not to assert the claim."); *Levine v. Smith*, Del. Supr., 591 A.2d 194, 200 (1991) ("The directors of a corporation and not its shareholders manage the business and affairs of the corporation . . . and accordingly, the directors

are responsible for deciding whether to engage in derivative litigation."); *Spiegel v. Buntrock*, Del.Supr., 571 A.2d 767, 773 (1990) ("The decision to bring a law suit or to refrain from litigating a claim on behalf of a corporation is a decision concerning the management of the corporation.").

**19.** *See Disney*, at 746 A.2d at 255 (" '[I]f demand is excused or wrongfully refused, the stockholder will normally control the proceedings.' ") (quoting *Grimes*, 673 A.2d at 1215); *Rales*, 634 A.2d at 932 ("Because directors are empowered to manage, or direct the management of, the business and affairs of the corporation, 8 *Del. C.* § 141(a), the right of a stockholder to prosecute a derivative suit is limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation.").

from the board.[20] To satisfy this requirement, the "stockholder plaintiff[ ] must overcome the powerful presumptions of the business judgment rule"[21] by alleging sufficient particularized facts to support an inference that demand is excused because the board is *"incapable* of exercising its power and authority to pursue the derivative claims directly."[22] In *Aronson v. Lewis*,[23] we held that a demand on the board is excused only if the complaint contains particularized factual allegations raising a reasonable doubt that either: (1) "the directors are disinterested and independent" or "(2) the challenged transaction was otherwise the product of a valid exercise of business judgment."

■ In the present case, the plaintiff does not contest the Court of Chancery's conclusion that a majority of the ICN directors were disinterested and independent.[24] The plaintiff must therefore carry the "heavy burden" of showing that the well-pleaded allegations in the complaint create a reasonable doubt that the board's decisions were "the product of a valid exercise of business judgment."[25] Although the derivative complaint includes allegations that seem designed to support a "failure to supervise" claim,[26] the plaintiff has

20. Ct. Ch. Rule 23.1 ("The complaint shall ... allege with particularity the efforts, if any, ... to obtain the action the plaintiff desires from the directors ... and the reasons for the plaintiff's failure to obtain the action or for not making the effort.").

21. *Rales*, 634 A.2d at 933.

22. *Levine*, 591 A.2d at 205 (emphasis in original).

23. 473 A.2d at 814; *see also Disney*, 746 A.2d at 255 ("The issue is whether plaintiffs have alleged particularized facts creating a reasonable doubt that the actions of the defendants were protected by the business judgment rule."); *Grimes*, 673 A.2d at 1216 ("The basis for claiming excusal would normally be that: (1) a majority of the board has a material financial or familial interest; (2) a majority of the board is incapable of acting independently for some other reason such as domination or control; or (3) the underlying transaction is not the product of a valid exercise of business judgment.") (footnotes omitted).

24. As the Court of Chancery observed, the allegations in the complaint may be read to suggest that demand is futile because a majority of the directors are not independent for purposes of responding to a demand in this case. For example, the plaintiff alleges that "Defendant Panic controls and dominates the Board of Directors of ICN" because all of the directors were appointed "at the explicit direction and request of" Panic and because all of the directors "are beholden to Panic" based on the fees "directed to their other

businesses by Panic." On this last point, the complaint lists (1) $33,440 in legal fees paid to director Bayh's law firm and (2) consulting fees of $75,000, $50,000, $12,000, $48,000, and $48,000 paid to five of the other directors. The trial court held that these allegations are legally insufficient to raise a doubt about the independence of a majority of the directors, *see White*, Mem. Op. at 17–19, 2000 WL 85046, and the plaintiff does not challenge this holding on appeal.

25. *Aronson*, 473 A.2d at 814; *Grobow v. Perot*, Del.Supr., 539 A.2d 180, 190 (1988). This inquiry "focuses on the substantive nature of *the challenged transaction and the board's approval thereof." Rales*, 634 A.2d at 933 (emphasis in original).

26. *See, e.g., In re Caremark Int'l Inc. Derivative Litig.*, Del. Ch., 698 A.2d 959, 971 (1996); *Graham v. Allis–Chalmers*, Del.Supr., 188 A.2d 125, 130 (1963). For example, the complaint alleges that the board breached its fiduciary duties "through a sustained and systematic failure to exercise any oversight over Panic to prevent his misconduct" and by "failing to design, implement and monitor appropriate controls and policies" to ensure compliance with federal and state laws prohibiting sexual harassment. The plaintiff also alleges that the board "turn[ed] a blind eye to the hostile working environment cultivated by defendant Panic" and "permit[ted] defendant Panic to escape scot-free, notwithstanding his scandalous and repugnant misconduct." Relatedly, the plaintiff alleges that Panic created

elected not to pursue such a claim in the Court of Chancery or in this Court.[27] Instead, the plaintiff contends that demand is excused here because the defendant directors intentionally or with a reckless disregard of their fiduciary duties made decisions that condoned or encouraged Panic's alleged misconduct.

The plaintiff identifies two board decisions that, in his view, support this theory. First, the plaintiff contends that the board did not exercise valid business judgment when it refused to curb or sanction Panic's alleged misconduct despite the board's knowledge that ICN could be held liable for the misconduct. Second, the plaintiff contends that the board did not exercise business judgment when it decided to use corporate funds: (1) to pay settlements against ICN without requiring reimbursement from Panic and (2) to guarantee a $3.5 million loan to Panic without obtaining adequate collateral from Panic.[28] These allegations, the plaintiff argues, are sufficient to show that demand is futile because they raise a reasonable doubt that the board's decisions were the product of valid business judgment. For the reasons that follow, we disagree and find that the particularized allegations in the complaint do not support the plaintiff's contention that demand is excused.

### Decision Not to Sanction Panic for the Alleged Misconduct

 As the Court of Chancery noted, the factual allegations in the complaint concerning the board's knowledge and conduct are sparse.[29] To support the allegation that the defendant directors were aware that Panic had actually engaged in the alleged misconduct, the complaint quotes ICN director Norman Barker as saying: "[T]he problem with Panic is he can't keep it in his pants." Although Barker's comment implies some level of knowledge of Panic's sexual activity, the comment cannot by itself support a reasonable inference that Barker or any of the other directors were aware that Panic had, in fact, harassed female ICN employees or engaged in other conduct for which ICN could be held liable.

The plaintiff also argues that the directors must have known about Panic's misconduct because they agreed to settle eight harassment suits lodged against Panic and ICN. The defendant directors would not have approved the settlement of eight such suits, the argument goes, unless they knew that Panic had actually engaged in the misconduct alleged in those suits.

 The decision to approve the settlement of a suit against the corporation is entitled to the same presumption of good faith as other business decisions taken by a disinterested, independent board.[30]

a corporate environment that "unabashedly fostered a hostile working environment" and that the board "knowingly or recklessly implement[ed], approv[ed] and/or acquiesc[ed] to a corporate culture that turned a blind eye to violations of employee civil rights, even if it meant violating applicable federal and state laws, rules or regulations." In this regard, the complaint refers to the absence of females in top managerial positions and a company-sanctioned "best legs" contest for female employees.

**27.** *See White,* Mem. Op. at 9, 2000 WL 85046 ("[P]laintiff is quite clear in connection with

the pending motion that this is not a 'failure to monitor' case.").

**28.** In essence, the plaintiff argues that the board's approval of the use of corporate funds in this context constituted a waste of corporate assets.

**29.** The directors and Panic have, according to the complaint, "conceded the absence of any efforts to sanction Panic" in their depositions.

**30.** *See Perrine v. Pennroad Corp.,* Del.Supr., 47 A.2d 479, 487 (1946) (discussing "honest business discretion" of directors in deciding

Similarly, the board's decision not to seek contribution from persons involved in the conduct underlying a suit against the corporation is a business decision within the discretion of the board.

In the present case, the plaintiff has not pleaded facts indicating that the challenged settlements were anything other than routine business decisions in the interest of the corporation. For example, the complaint provides no basis to infer the board's assessment of the merits of the suits.[31] The complaint does not allege the amounts involved in the settlements or the amount of damages claimed in the suits.[32] Indeed, the complaint does not even specify the precise conduct alleged in the various suits against ICN and Panic.[33] Absent particularized allegations on these points, we find too tenuous any inference based on the board's approval of eight settlements that the board knew that Panic had actually engaged in misconduct. We also note that the alleged settlements, in which neither Panic nor ICN admitted wrongdoing, are consistent with a desire to be rid of strike suits and to avoid the cost of protracted litigation. Thus, the presumption of the business judgment rule is not rebutted.

We therefore conclude that, under the heightened pleading standards of Rule 23.1,[34] the particularized allegations in the complaint do not adequately support the plaintiff's theory that the board knew (or proceeded in face of an unjustifiable risk) that Panic had engaged in misconduct but refused to take action to protect ICN from liability for that misconduct. As a consequence, the plaintiff has failed to create a reasonable doubt that the board's decisions were the product of a valid exercise of business judgment.

### Use of Corporate Funds to Facilitate Panic's Payment of Settlements

The plaintiff's second primary contention is that the board's decision to use corporate funds to facilitate Panic's payment of the $3.5 million settlement of a paternity suit was not a valid exercise of business judgment.[35] Although it is unclear from the briefs whether the plaintiff's claim is based on corporate waste or

whether to settle lawsuits); *see also Feldman v. Pennroad Corp.*, 3rd Cir., 155 F.2d 773, 775–76 (1946) (same).

**31.** The directors were aware of the suits against ICN and the resulting settlements, but this fact does not indicate that the directors knew that the suits were meritorious or that Panic had engaged in the conduct alleged in those suits.

**32.** As noted earlier, the complaint (and the *U.S. News* article) did not specify the amounts involved in each suit against ICN and Panic. The only clear statement in the complaint refers to Panic's $3.5 million settlement of a paternity suit filed by Debra Levy. Panic ultimately paid this settlement with a loan guaranteed by ICN.

**33.** The *U.S. News* article provided a slightly more detailed account of Panic's alleged misconduct.

**34.** *See Disney*, 746 A.2d at 254 ("[Rule 23.1] pleadings must comply with stringent requirements of factual particularity that differ substantially from the permissive notice pleadings.").

**35.** To the extent that the plaintiff's argument relates to Panic's salary as CEO, the argument fails in light of the board's broad discretion to set executive compensation. *See Disney*, 746 A.2d at 262 n. 56; *see also Grimes*, 673 A.2d at 1215 ("If an independent and informed board, acting in good faith, determines that the services of a particular individual warrant large amounts of money, whether in the form of current salary or severance provisions, the board has made a business judgment."). The argument also fails if one characterizes the board's decision as a failure to reduce Panic's salary to sanction his misconduct because the board has discretion to determine whether to impose such sanctions and the extent of the sanctions.

bad faith by the board, we find that the well-pleaded facts in the complaint do not support either theory.[36] For the sake of simplicity, we analyze the plaintiff's claims under the corporate waste standard.

A board's decisions do not constitute corporate waste unless they are exceptionally one-sided.[37] Accordingly, we have defined "waste" to mean "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade."[38] As a practical matter, a stockholder plaintiff must generally show that the board "irrationally squander[ed]" corporate assets—for example, where the challenged transaction served no corporate purpose or where the corporation received no consideration at all.[39]

Under this standard, a corporate waste claim must fail if "there is *any* *substantial* consideration received by the corporation, and ... there is a *good faith*

*judgment* that in the circumstances the transaction is worthwhile."[40] This is so even if the transaction appears, with hindsight, to be unreasonably risky to a reviewing court. As we have observed, "courts are ill-fitted to attempt to weigh the 'adequacy' of consideration under the waste standard or, *ex post*, to judge appropriate degrees of business risk."[41] Thus, absent some reasonable doubt that the ICN board proceeded based on a good faith assessment of the corporation's best interests, the board's decisions are entitled to deference under the business judgment rule.[42]

In the present case, the plaintiff alleges that the board guaranteed a $3.5 million bank loan to Panic and deposited $3.6 million in an account at the bank as "collateral" for the guarantee. Panic, in turn, gave ICN as collateral 150,000 options on ICN stock at a strike price of about $15—which, as the plaintiff concedes, are "valuable." Even assuming that this arrangement constitutes an outright loan by the board,

36. The standards for corporate waste and bad faith by the board are similar. To prevail on a waste claim or a bad faith claim, the plaintiff must overcome the general presumption of good faith by showing that the board's decision was so egregious or irrational that it could not have been based on a valid assessment of the corporation's best interests. *Compare Disney*, 746 A.2d at 263 (defining corporate waste as "an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade") with *In re J.P. Stevens & Co., Inc. Shareholders Litigation*, Del. Ch., 542 A.2d 770, 780–81 (1988) (identifying bad faith by "assessing whether that decision is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith").

37. *See Grobow v. Perot*, Del.Supr., 539 A.2d 180 (1988) (holding that a waste determination depends on "whether 'what the corporation has received is so inadequate in value that no person of ordinary, sound business

judgment would deem it worth that which the corporation has paid.' ") (quoting *Saxe v. Brady*, Del. Ch., 184 A.2d 602, 610 (1962)); *Disney*, 746 A.2d at 263 (describing the waste as " 'an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration' ") (quoting *Glazer v. Zapata Corp.*, Del. Ch., 658 A.2d 176, 183 (1993)).

38. *Disney*, 746 A.2d at 263; *Lewis v. Vogelstein*, Del. Ch., 699 A.2d 327, 338 (1997) ("Roughly, a waste entails an exchange of corporate assets for consideration so disproportionately small as to lie beyond the range at which any reasonable person might be willing to trade.").

39. *Disney*, 746 A.2d at 263.

40. *Id.* (emphasis in original).

41. *Id.*

42. *See Grobow*, 539 A.2d at 187–88.

Panic provided valuable consideration for the loan in the form of his stock options. Moreover, there is no allegation that the board waived ICN's legal rights in the event that ICN was called upon to pay out under the guarantee. The terms of the loan and the guarantee are not so inadequate or "one-sided" as to cast a reasonable doubt on the board's decision to approve them.

We therefore conclude that the particularized facts on the face of the complaint, both individually and collectively, are legally insufficient to create a reasonable doubt that the board's decisions were the product of a valid exercise of business judgment. Accordingly, the Court of Chancery properly dismissed the plaintiff's complaint for failure to show that demand was excused under the second prong of *Aronson*.[43]

### *Opportunity to Amend the Complaint is Not Warranted*

 As a general proposition, a plaintiff is not permitted to amend a deriv-

ative suit complaint after this Court affirms the Court of Chancery's judgment dismissing the complaint.[44] We have implicitly recognized a narrow exception to this policy where the Court affirms the judgment of the Court of Chancery but announces a new rule of law or clarifies pleading standards that apply to the plaintiff's cause of action. In the interest of fairness, the Court directs the Court of Chancery in such cases to grant the plaintiff leave to amend the complaint in accordance with the newly announced rule or clarification.[45]

The policy against permitting stockholder plaintiffs to amend their complaints after an unsuccessful appeal encourages the plaintiffs to investigate their claims *before* filing a complaint so that they have a basis at the outset to make particularized factual allegations in the complaint. In contrast, if plaintiffs were granted leave to amend deficient complaints as a matter of course after an unsuccessful appeal, plaintiffs

---

**43.** Panic and the directors argue that the exculpatory provision in Section Twelve of the ICN Certificate of Incorporation, enacted pursuant to 8 *Del. C.* § 102(b)(7), bars suits for money damages against the board where independent, disinterested directors exercise their good faith business judgment. Because the Court of Chancery did not discuss the effect of this provision in this case and because our conclusion obviates the need to reach this issue, we do not address it here. We also express no view whether the underlying facts of this case, if supported by particularized allegations in the complaint, would be sufficient to create a reasonable doubt that the board's decisions were the product of valid business judgment.

**44.** Of course, where we have found that the Court of Chancery improperly denied a plaintiff's motion to amend its complaint, we have directed the Court of Chancery to permit the amendment on remand. *See, e.g., Rabkin v. Philip A. Hunt Chemical Corp.*, Del.Supr., 498 A.2d 1099, 1108 (1985) (directing Court of

Chancery to grant leave to amend complaint after trial court denied motion to amend based on faulty legal conclusions); *Walsh v. Hotel Corp. of America*, Del.Supr., 231 A.2d 458, 461 (1967) (directing Superior Court to allow amendment because denial of motion to amend was based on legal error); *Barker v. Huang*, Del.Supr., 610 A.2d 1341, 1347 (1992) (directing Superior Court to grant leave to amend complaint where plaintiff's affidavit constituted a motion to amend complaint).

**45.** *See, e.g., Loudon v. Archer–Daniels–Midland Co.*, Del. Supr., 700 A.2d 135, 147 (1997) ("Because of the unique circumstances of this case, where we have been called upon to explicate pleading standards and the limited principles applicable to damages in a disclosure case, we remand for the sole purpose of allowing the plaintiff a reasonable opportunity to replead in a manner consistent with this opinion."); *Disney*, 746 A.2d at 267 (directing Court of Chancery to permit plaintiff to amend complaint "[b]ecause of the unusual nature of this case").

would have a reduced incentive to ensure that their original complaints are complete from the start.[46]

A brief review of the three cases in which we have granted plaintiffs an opportunity to amend their complaint after an appeal suffices to illustrate this point. In the *Disney* case,[47] we agreed that the complaint as written failed to satisfy the Rule 23.1 pleading requirements. We nevertheless directed the Court of Chancery to grant leave to amend the complaint because of several important legal issues addressed in the Court's opinion. In particular, the *Disney* Court clarified that: (1) we review de novo decisions by the Court of Chancery to dismiss derivative suits; and (2) the complaint may have stated a claim not addressed by the Court of Chancery concerning the board's reliance on an expert's opinion in approving the challenged contract.[48] Because the plaintiff in *Disney* did not have the benefit of these clarifications at the time of the original complaint, we permitted the plaintiff to amend the complaint.

In *Loudon v. Archer–Daniels–Midland Co.*,[49] we held that the complaint did not satisfy Chancery Rule 8(a), but we remanded the case to permit the plaintiff to amend his complaint in accordance with the clarification announced in our decision. In *Loudon* we held that directors are personally liable for damages arising from a defective proxy statement only "where the misstatement or omission implicates the stockholders' economic or voting rights."[50] Since this limitation was not clear at the time of the original complaint, we permitted the plaintiff to amend the complaint.

Similarly, in *Malone v. Brincat*,[51] we clarified the law governing public statements by a board of directors. In *Malone* we held that a board may breach its fiduciary duty of good faith by issuing false public statements that injure the corporation or individual shareholders, even if the board's false disclosures were not related to a request for shareholder action.[52] Because we had not explicitly recognized this in our earlier cases, we granted the plaintiff an opportunity to amend the complaint in accordance with our opinion.[53]

In the present case, there is no issue surrounding the pleading requirements under Chancery Rule 23.1, and we have neither clarified nor changed the pleading requirements as applied to the claims asserted in the complaint. As a result, the narrow exception to the general policy against permitting the plaintiff to amend a complaint after an unsuccessful appeal does not apply.

 We also decline the plaintiff's invitation to extend this exception to cases in which the underlying conduct alleged in the complaint is particularly egregious or distasteful. Contrary to the plaintiff's argument, this case demonstrates the salu-

---

**46.** Where a plaintiff's failure to allege certain facts in its original complaint is excusable, the Court of Chancery retains discretion to grant the plaintiff leave to amend the complaint. *See Bokat v. Getty Oil Co.*, Del.Supr., 262 A.2d 246, 251 (1970) ("Ordinarily, at least, the purpose of allowing an amendment to a complaint is to include matters which occurred prior to the filing of the original complaint which for some excusable reason were not included in the original complaint.").

**47.** 746 A.2d at 267.

**48.** *See Disney*, 746 A.2d at 253–54, 254–55, 260–61.

**49.** 700 A.2d at 147.

**50.** *Id.* at 137.

**51.** Del.Supr., 722 A.2d 5, 14 (1998).

**52.** *See id.* at 9.

**53.** *See id.* at 14.

tary effects of a rule encouraging plaintiffs to conduct a thorough investigation, using the "tools at hand" including the use of actions under 8 *Del. C.* § 220 for books and records, before filing a complaint.[54] As the Court of Chancery observed, further pre-suit investigation in this case may have yielded the particularized facts required to show that demand is excused or it may have revealed that the board acted in the best interests of the corporation.[55] In any event, the plaintiff's failure to undertake this investigation before filing the complaint—even if based on a good faith belief that the allegations in the complaint were sufficient under Rule 23.1—cannot justify granting the plaintiff a second opportunity to remedy the complaint's obvious deficiencies. Accordingly, we conclude that it would not be appropriate to grant the plaintiff leave to amend the complaint.[56]

### Conclusion

For the reasons set forth above, we affirm the judgment of the Court of Chancery dismissing the plaintiff's derivative complaint with prejudice.

---

54. *See, e.g., Rales,* 634 A.2d at 934 n. 10 ("[A] stockholder...may use the summary procedure embodied in 8 *Del. C.* 220 to investigate the possibility of corporate wrongdoing"). In several cases, this Court has described the various "tools at hand" available to plaintiffs. *See, e.g., Disney,* 746 A.2d at 249; *Grimes,* 673 A.2d at 1216–19 (1996); *Thomas & Betts Corp. v. Leviton Mfg. Co.,* Del.Supr., 681 A.2d 1026, 1031 n. 3 (1996); *Scattered Corp. v. Chicago Stock Exchange, Inc.,* Del.Supr., 701 A.2d 70, 78 (1997). We note that the dismissal of the plaintiff's derivative complaint with prejudice does not necessarily bar a later action for books and records by a stockholder under Section 220. Under Section 220, a stockholder demanding inspection of a corporation's books and records must demonstrate a "proper purpose" for the request. *See* 8 *Del. C.* § 220(c) ("Where the stockholder seeks to inspect the corporation's books and records, other than its stock ledger or list of stockholders, such stockholder shall first establish (1) that such stockholder has complied with this section respecting the form and manner of making demand for inspection of such documents; and (2) that the inspection such stockholder seeks is for a proper purpose."). Although "[m]ere curiosity or a desire for a fishing expedition will not suffice [to show a proper purpose under Section 220]," a stockholder is entitled to an inspection of books and records upon "a credible showing, through documents, logic, testimony or otherwise, that there are legitimate issues of [corporate] wrongdoing." *Security First Corp.,* 687 A.2d at 568; *see also* 8 *Del. C.* 220(b) ("A proper purpose shall mean a purpose reasonably related to such person's interest as a stockholder."). Thus, the with-prejudice dismissal of the complaint in this case does not *necessarily* bar a later stockholder request for books and records in a good faith effort to bring corporate misconduct to light—for example, to alert the board to the misconduct or to initiate a proxy contest to remove the board—so long as the stockholder can provide a credible basis to believe that such misconduct is occurring. We express no opinion whether the plaintiff can make such a showing in this case.

55. *See White,* Mem. Op. at 16, 2000 WL 85046.

56. Our conclusion in this case does not involve a retroactive application of the recently enacted Chancery Rule 15(aaa). Under this rule, once a defendant files a motion to dismiss a complaint, the plaintiff has two options. The plaintiff may amend the complaint to remedy defects identified in the motion or the plaintiff may stand on the complaint and risk a with-prejudice dismissal that does not allow for later amendments to the complaint absent "good cause shown." In this case, the Court of Chancery dismissed the plaintiff's complaint under the practices prevailing before Rule 15(aaa), and we have affirmed on that basis.