# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT A. FEUER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **C.A. No. 2019-0324-JRS** |
| | ) | |
| MARK ZUCKERBERG; SHERYL K. | ) | |
| SANDBERG; PETER A. THIEL; | ) | |
| REED HASTINGS; SUSAN D. | ) | |
| DESMOND-HELLMAN; MARC L. | ) | |
| ANDREESSEN; JAN KOUM; and | ) | |
| ERSKINE B. BOWLES, | ) | |
| | ) | |
| Defendants, and | ) | |
| | ) | |
| FACEBOOK, INC., | ) | |
| | ) | |
| Nominal Defendant. | ) | |
| | ) | |
| | ) | |
| IN RE FACEBOOK, INC. | ) | **CONSOLIDATED** |
| DERIVATIVE LITIGATION | ) | **C.A. No. 2018-0307-JRS** |

## MEMORANDUM OPINION

Date Submitted:  October 1, 2021
Date Decided:  October 5, 2021

Daniel K. Astin, Esquire of Ciardi Ciardi & Astin, Wilmington, Delaware; Richard D. Greenfield, Esquire, Marguerite R. Goodman, Esquire and Ann M. Caldwell, Esquire of Greenfield & Goodman LLC, Philadelphia, Pennsylvania; and Albert A. Ciardi III, Esquire and Walter W. Gouldsbury III, Esquire of Ciardi, Ciardi & Astin, Philadelphia, Pennsylvania, Attorneys for Plaintiff Robert A. Feuer.

Kevin H. Davenport, Esquire, Samuel L. Closic, Esquire, John G. Day, Esquire and Elizabeth Wang, Esquire of Prickett, Jones & Elliott, P.A., Wilmington, Delaware; Peter B. Andrews, Esquire; Craig J. Springer, Esquire and David M. Sborz, Esquire of Andrews & Springer, LLC; Geoffrey M. Johnson, Esquire of Scott+Scott Attorneys At Law LLP, Cleveland Heights, Ohio; Donald A. Broggi, Esquire, William C. Fredericks, Esquire, Scott R. Jacobsen, Esquire and Jing-Li Yu, Esquire of Scott+Scott Attorneys At Law LLP, New York, New York; Daniel B. Rehns, Esquire, Frank R. Schirripa, Esquire, Kurt M. Hunciker, Esquire, Kathryn Hettler, Esquire of Hach Rose Schirripa & Cheverie LLP, New York, New York; Brian J. Robbins, Esquire, Stephen J. Oddo, Esquire and Gregory E. Del Gaizo, Esquire of Robbins LLP, San Diego, California; Thomas J. McKenna, Esquire and Gregory M. Egleston, Esquire of Gainey McKenna & Egleston, New York, New York; Joseph J. Tabacco, Jr. and Daniel E. Barenbaum, Esquire of Berman Tabacco, San Francisco, California; and Joseph W. Cotchett, Esquire, Mark Molumphy, Esquire and Julia Peng, Esquire of Cotchett Pitre & McCarthy LLP, Attorneys for Plaintiffs Construction and General Building Laborers' Local Union No. 79 General Fund, City of Birmingham Retirement and Relief System and Lidia Levy.

Thaddeus J. Weaver, Esquire of Dilworth Paxson LLP, Wilmington, Delaware; Frederic S. Fox, Esquire, Laurence D. King, Esquire, Hae Sung Nam, Esquire, Donnie Hall, Esquire and Aaron Schwartz, Esquire of Kaplan Fox & Kilsheimer LLP, New York, New York; Kathleen A. Herkenhoff, Esquire of Kaplan Fox & Kilsheimer LLP, Oakland, California; Catherine Pratsinakis, Esquire of Dilworth Paxson LLP, Philadelphia, Pennsylvania; Attorneys for Plaintiffs Karen Sbriglio, Firemen's Retirement System of St. Louis and California State Teachers' Retirement System.

Nathan A. Cook, Esquire and Mae Oberste, Esquire of Block & Leviton LLP, Wilmington, Delaware; Kurt M. Heyman, Esquire, Melissa N. Donimirski, Esquire, Aaron M. Nelson, Esquire of Heyman Enerio Gattuso & Hirzel LLP, Wilmington, Delaware; Jason M. Leviton, Esquire, Joel Fleming, Esquire and Lauren G. Milgroom, Esquire of Block & Leviton LLP, Boston, Massachusetts, Attorneys for Plaintiffs Employees' Retirement System of Rhode Island and City of Warwick Retirement System.

David E. Ross, Esquire, R. Garrett Rice, Esquire of Ross Aronstam & Moritz LLP, Wilmington, Delaware; Orin Snyder, Esquire of Gibson, Dunn & Crutcher LLP, New York, New York; Brian M. Lutz, Esquire of Gibson, Dunn & Crutcher LLP, San Francisco, California; Paul J. Collins, Esquire of Gibson, Dunn & Crutcher LLP, Palo Alto, California; and Joshua S. Lipshutz, Esquire of Gibson, Dunn & Crutcher LLP, Washington, DC, Attorneys for Defendants Mark Zuckerberg, Sheryl Sandberg, Marc Andreessen, Erskine B. Bowles, Susan Desmond-Hellmann, Reed Hastings, Jan Koum, Peter A. Thiel and Nominal Defendant Facebook, Inc.

**SLIGHTS, Vice Chancellor**

This opinion addresses an uncommon but not unheard of question of case management. Several plaintiffs have brought derivative actions on behalf of Nominal Defendant, Facebook, Inc. ("Facebook" or the "Company"), against certain officers and directors of the Company alleging that these fiduciaries are responsible for harm caused to the Company following its failure to protect the privacy of user data. All but one of these plaintiffs elected not to make a demand on Facebook's board of directors (the "Board") to pursue the claims, alleging instead that demand would be futile. Plaintiff, Robert A. Feuer, however, made a written demand on the Board and now alleges in his complaint that the Board wrongfully refused his demand.

Facebook has moved for an order consolidating Feuer's claims with those of the other plaintiffs, or alternatively, for an order staying Feuer's demand-refused claim while the demand-futility claims are litigated to conclusion. The demand-futility plaintiffs oppose consolidation but support a stay of the Feuer demand-refused action. For his part, Feuer opposes both consolidation and a stay of his case. He is ambivalent on whether the demand-futility actions should be stayed.

As noted, this case management quandary is hardly work-a-day. And not surprisingly. Most plaintiffs who seek to pursue derivative claims have no confidence in the decision-making of a board of directors comprised of the same actors who will be named as defendants in the action. In such circumstances, the

1

stockholders most typically will allege that demand on the board would be futile rather than take on the challenge of pleading that a board who refused a demand did so in bad faith. With that said, the simultaneous prosecution of demand-futility and demand-refused complaints is not unheard of in this court. Indeed, just last year, then-Chancellor Bouchard confronted a nearly identical circumstance in the *Boeing* derivative litigation.[1] After carefully considering the matter, he elected not to consolidate the demand-futility and demand-refused cases and to stay the demand-refused case in favor of the demand-futility cases.[2]

While I decline to endorse a blanket rule favoring demand-futility complaints over demand-refused complaints, for reasons explained below, I am satisfied the approach taken in *Boeing* makes sense here. In a case where the putative derivative plaintiff has made substantive allegations that a board cannot properly consider a demand to pursue the claims, that complaint should proceed to pleading stage dispositive motion practice ahead of a demand-refused complaint arising from the same alleged wrongdoing.

---

[1] *Isman v. Bradway*, C.A. No. 2019-0794-AGB (Del. Ch. Aug. 3, 2020) (ORDER) (Transaction ID 65689651) (D.I 100).

[2] *Id.*

The motion to consolidate is denied. And the Feuer action will be stayed pending the Court's resolution of the pleading stage challenge to the operative demand-futility complaint under Chancery Rule 23.1.

## I. BACKGROUND

I have drawn the facts primarily from the pleadings before the Court and, to a lesser degree, from the briefing on the contested motions to consolidate or to stay the Feuer action.[3]

### A. Parties and Relevant Non-Parties

Plaintiff, Robert A. Feuer, has continuously held Facebook common stock since May 18, 2012.[4]

Nominal Defendant, Facebook, Inc., is a Delaware corporation with headquarters in Menlo Park, California.[5]

The individuals named as defendants are all Facebook fiduciaries. Each serve(d) either as members of Facebook's Board, as Facebook officers, or both.[6]

There are other plaintiffs pursuing claims derivatively on behalf of Facebook based generally on the same facts and same legal theories advanced by Feuer, but

---

[3] C.A. No. 2018-0307 (D.I. 197, 210, 215, 222); C.A. No. 2019-0324 (D.I. 77–83, 85–87).

[4] Verified Deriv. Compl. ("Feuer Compl.") C.A. No. 2019-0324 (D.I. 1) ¶ 1.

[5] Feuer Compl. ¶ 2.

[6] Feuer Compl. ¶¶ 5–22.

each of these plaintiffs have alleged that demand on Facebook's Board is futile. They consist of two groups—the CalSTRS Plaintiffs[7] and the RI Plaintiffs.[8]

## B. The Competing Derivative Theories Emerge

As noted, several stockholder plaintiffs have brought derivative actions on behalf of Facebook against certain officers and directors for their role in allowing the personal information of Facebook users to be misused and in causing the resulting "corporate trauma" suffered by the Company.[9] The CalSTRS Plaintiffs and the RI Plaintiffs decided not to make a demand on Facebook's Board, alleging instead that demand is futile.[10]

Feuer elected to take a different tack. On June 27, 2018, he directed a written demand to the Board in which he expressed his view that the Board must pursue the claims against the involved fiduciaries on behalf of Facebook.[11] Almost two months

---

[7] The CalSTRS Plaintiffs include the following: California State Teachers' Retirement System, City of Birmingham Retirement and Relief System, Construction and General Building Laborers' Local Union No. 79 General Fund, Firemen's Retirement System of St. Louis, Karen Sbriglio and Lidia Levy. *See* C.A. No. 2018-0307 (D.I. 189).

[8] The RI Plaintiffs include the following: Employees' Retirement System of Rhode Island and City of Warwick Retirement System. *See* C.A. No. 2021-0617 (D.I. 1).

[9] *South v. Baker*, 62 A.3d 1, 12 (Del.Ch. 2012) (describing the fall-out from a board's failure to exercise appropriate oversight as "corporate trauma").

[10] Second Amend. Verified S'holder Deriv. Compl., C.A. No. 2018-0307 (D.I. 189) ¶ 560; Verified S'holder Deriv. Compl., C.A. No. 2021-0617 (D.I. 1) ¶ 339.

[11] Feuer Compl. ¶ 27.

4

later, on August 15, 2018, Feuer's counsel wrote a separate letter to Zuckerberg, Facebook's CEO and Chairman of the Board, reminding him of the earlier-delivered demand and requesting a response.[12]  The letter stated, in part, "I trust that the Board has *de facto* rejected the demands set forth in [the] June 27 letter.  If I am incorrect, please have legal counsel for the Board get back to me promptly."[13]  Facebook never responded.[14]  Feuer filed his complaint soon after.

## C. Facebook Seeks Consolidation

On May 20, 2019, Facebook moved to stay the Feuer proceedings to allow for the coordination of the various derivative lawsuits following the conclusion of a pending Section 220 action.[15]  The parties then agreed to stay the Feuer action, and Facebook offered, in return, to produce Section 220 documents to Feuer.[16]  That stay will expire upon the Court's leadership decision in the now-consolidated demand-futility actions.[17]

---

[12] Feuer Compl. ¶ 28.

[13] *Id.*

[14] Feuer Compl. ¶ 29.

[15] D.I. 9.  Unless otherwise specified, D.I. numbers hereafter refer to C.A. No. 2019-0324.

[16] D.I. 26, 29–33.

[17] D.I. 32.

On August 3, 2021, as oral argument regarding leadership of the demand-futility actions approached, the parties filed several motions directed to management of the several separate actions. For their part, the Defendants, including Facebook, moved to consolidate or, in the alternative, to stay the Feuer action.[18] They argued that Feuer's action is substantially similar to the to-be-consolidated demand-futility actions, and all actions should be combined as one to prevent the waste caused by duplicative litigation.[19] Alternatively, they suggested that the Feuer action be stayed pending the resolution of the demand-futility actions.[20]

The plaintiffs vying for leadership in the demand-futility actions also brought motions on August 3, 2021.[21] The CalSTRS Plaintiffs argued the Feuer action should not be consolidated with the demand-futility actions. They also argued that Feuer's demand-made case should be stayed pending resolution of the demand-futility actions.[22] The RI Plaintiffs moved to intervene and to extend the stay of the Feuer action.[23]

---

[18] D.I. 79.

[19] D.I. 79 ¶¶ 10–13.

[20] D.I ¶ 14.

[21] D.I. 77–78.

[22] D.I. 77 ¶¶ 2–4.

[23] D.I. 78.

## II. ANALYSIS

I first address whether the Feuer demand-refused action should be consolidated with the demand-futility actions. Upon concluding that consolidation is not appropriate, I next consider whether the Feuer action should be stayed pending resolution of the other plaintiffs' demand-futility claims, and if so, under what principle. For reasons I explain, in this instance, a stay of the demand-refused action in favor of the demand-futility actions is appropriate.

### A. Derivative Actions under Rule 23.1

"A cardinal precept of the General Corporation Law of the state of Delaware is that directors, rather than shareholders, manage the business and affairs of the corporation."[24] All of the claims at issue here allege harm suffered by Facebook itself, and recovery for that harm would flow to Facebook. Thus, the claims belong to Facebook, and the decision of whether to pursue the claims presumptively lies with the Board.[25] With that said, our law recognizes that, "[i]n certain circumstances, stockholders may pursue litigation derivatively on behalf of the

---

[24] *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[25] *White v. Panic*, 783 A.2d 543, 550 (Del. 2001) ("In most situations, the board of directors has sole authority to initiate or to refrain from initiating legal actions asserting rights held by the corporation."); *Brookfield Asset Mgmt., Inc. v. Rosson*, 2021 WL 4260639, at *8 (Del. Sept. 20, 2021) (confirming that, in Delaware, our courts look to who suffered the harm and who will benefit from any recovery when assessing whether a claim is direct or derivative).

corporation as a matter of equity to redress the conduct of a torpid or unfaithful management . . . where those in control of the company refuse to assert (or are unfit to consider) a claim belonging to it."[26]

Delaware law requires that stockholders satisfy the demand requirements set forth in Court of Chancery Rule 23.1 before "assum[ing] control of a claim belonging to the corporation."[27] To meet the Rule 23.1 requirements, a stockholder must plead with particularity either that (1) she made a demand on the company's board of directors to pursue particular claims and was wrongfully refused or (2) that any such demand would be futile, thereby excusing the need to make a demand altogether.[28] The two-part framework presupposes that making a demand and arguing demand futility are both viable choices for stockholders; Delaware courts

---

[26] *In re CBS Corp. S'holder Class Action & Deriv. Litig.*, 2021 WL 268779, at *27 (Del. Ch. Jan. 27, 2021), as corrected (Feb. 4, 2021) (quoting *Cumming v. Edens*, 2018 WL 992877, at *11 (Del. Ch. Feb. 20, 2018) (internal quotation marks omitted)).

[27] *Horman v. Abney*, 2017 WL 242571, at *6 (Del. Ch. Jan. 19, 2017).

[28] *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1044 (Del. 2004); *Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008); *In re The Boeing Co. Deriv. Litig.*, 2021 WL 4059934, at *21 (Del. Ch. Sept. 7, 2021). Chancery Rule 23.1(a) reads, in part, that "[t]he complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors . . . and the reasons for the plaintiff's failure to obtain the action or for not making the effort." Ct. Ch. R. 23.1(a).

8

have described these different approaches as two arrows in a stockholder's quiver when seeking to hold wrongdoers accountable to the corporation.[29]

## B. Consolidation

There is no real dispute among the parties that all of the derivative complaints at issue arise from the same underlying alleged wrongdoing—Facebook fiduciaries allegedly pursued a business strategy that violated the Company's legal obligations to protect user data and privacy, and this strategy has caused significant harm to the Company. The Defendants argue that this alone is sufficient for the Court to consolidate the demand-futility actions with the demand-refused action. I disagree. As Feuer points out, "[d]emand-made-and-refused and demand-futile cases are subject to a different legal analysis."[30] Our Supreme Court has explained:

> The focus of a complaint alleging wrongful refusal of demand is different from the focus of a complaint alleging demand futility. The legal issues are different; therefore, the legal standards applied to the complaints are necessarily different. A shareholder plaintiff, by making demand upon a board before filing suit, tacitly concedes the independence of a majority of the board to respond. Therefore, when a Board refuses a demand, the only issues to be examined are the good faith and reasonableness of its investigation.
>
> When a shareholder files a derivative suit asserting a claim of demand futility, hence demand excused, the basis for such a claim is that the

---

[29] *E.g.*, *Grimes v. Donald*, 673 A.2d 1207, 1218 (Del. 1996) ("If a demand is made, the stockholder has spent one—but only one—'arrow' in the 'quiver.'"), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000).

[30] Robert A. Feuer's Opp'n to the Facebook Defs.' Mot. to Consol. (D.I. 81) ¶ 6.

board is (1) interested and not independent; and (2) that the transaction attacked is not protected by the business judgment rule.[31]

Because the legal standards for demand-futility and demand-refused cases are so different, consolidation of the cases, particularly in advance of pleading stage dispositive motion practice, is unwarranted. "[P]ractical considerations [would] make it unduly complicated, inefficient, and unnecessary" for the demand-futility actions and the demand-refused action to be litigated simultaneously.[32]

## C. Demand Futility vs. Demand Made

The demand-futility plaintiffs argue that Feuer's action should be stayed because he has not shown how a continuation of the stay will prejudice him. That is true. It is also true, however, that it is not foregone that the demand-futility claims should proceed first ahead of Feuer's demand-refused claims. There is no such preference etched in our canon.

Recognizing that the matter is not settled, the CalSTRS Plaintiffs and the RI Plaintiffs suggest I follow Chancellor Bouchard's lead as expressed in his recent

---

[31] *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991) (citations and internal quotation marks omitted).

[32] *Brudno v. Wise*, 2003 WL 1874750, at *4 (Del. Ch. Apr. 1, 2003) (cleaned up). I need not, and choose not to, address the demand-futility plaintiffs' argument that consolidation would prejudice their efforts to resist the inevitable argument from the defendants that the consolidated plaintiffs have failed to well-plead demand futility because Feuer's implicit acknowledgement of Board independence should be imputed to the demand-futility plaintiffs. While that may well be another basis not to consolidate under these circumstances, I do not reach that issue here.

*Boeing* decision. In *Boeing*, as here, most plaintiffs argued that demand was futile, but one plaintiff made a demand. Chancellor Bouchard extended the stay of the demand-refused action pending a resolution of the demand-futility actions. He said:

> In my opinion, Isman's [the demand-made plaintiff] motion fails to provide any good reason why lifting the stay of his action now, before the issue of demand futility has been adjudicated, would advance the best interests of Boeing and its stockholders under the circumstances before the court. Accordingly, Isman's motion to lift the stay of his action is denied. Isman may seek relief from the stay after the issue of demand futility has been adjudicated.[33]

Like the demand-refused plaintiff in *Boeing*, Feuer has not demonstrated why lifting the stay would advance the best interests of Facebook and its stockholders. Nor has he shown how the stay would prejudice him, his case or, most importantly, the Company he seeks to represent. On these grounds alone, the Court would be well-within its discretion to deny the motion to consolidate and stay Feuer's action. But Feuer has argued that an order staying his claims would do violence to Chancery Rule 23.1 by implicitly endorsing a rule that gives *de jure* preference to a complaint that alleges demand futility over a complaint that alleges demand refused, even though Rule 23.1 expresses no such preference. Given the ferocity with which he has advanced this argument, I address it below.

---

[33] *Isman v. Bradway*, C.A. No. 2019-0794-AGB (Del. Ch. Aug. 3, 2020) (ORDER) (Transaction ID 65689651).

11

**D. When a Preference for a Demand-Futility Complaint Over a Demand-Refused Complaint is Appropriate**

The CalSTRS Plaintiffs and RI Plaintiffs suggest that the *Boeing* approach to sequencing should be adopted as a general rule. I disagree. Rigid rules in case management are generally unwise.[34] And that orientation is certainly apt here. On the one hand, if the unspoken "rule" is that demand-futility plaintiffs always go before demand-refused plaintiffs, there is a risk that stockholders will be less inclined to exercise their right to make a demand on the board to pursue claims, even in cases where a demand may be justified. That, of course, would blunt the optionality of Rule 23.1. And it would dilute the deference our law gives to boards in their management of the litigation asset.[35]

On the other hand, in most instances, certain practical considerations will justify a preference for allowing demand-futility claims to proceed ahead of demand-refused claims. First, as a general matter, demand-futility claims are more likely to withstand a motion to dismiss at the pleading stage. "Of the two potential routes presented by Rule 23.1—pleading demand excusal with particularity or making a

---

[34] *Accord* Federal Judicial Center, Manual for Complex Litigation (Fourth), at 1 (2004) (observing that "inflexible" approaches to the management of complex litigation should be avoided).

[35] *See Aronson*, 473 A.2d at 811 (noting that the board's presumptive right to decide whether to prosecute a claim on behalf of the corporation is a "cardinal precept" of our law).

pre-suit demand—the former is a steep road, but the latter is 'steeper yet.'"[36]  By making a demand, a stockholder "tacitly concede[s] the disinterest and independence of the board to respond.  The board's decision to refuse the demand, therefore, is subject to the business judgment rule,"[37] unless "the stockholder can allege facts with particularity creating a reasonable doubt that the board is entitled to the benefit of the presumption."[38]  With these relative degrees of difficulty in mind, it makes sense to allow the complaint that has the best chance of being vetted on the merits, after discovery, to proceed ahead of, and perhaps instead of, the complaint that has the best chance of never leaving the starting gate.[39]

---

[36] *City of Tamarac Firefighters' Pension Tr. Fund v. Corvi*, 2019 WL 549938, at *5 (Del. Ch. Feb. 12, 2019) (citing *Zucker v. Hassell*, 2016 WL 7011351, at *1 (Del. Ch. Nov. 30, 2016)).

[37] *Id.* (cleaned up); 1 R. Franklin Balotti et al., *Balotti and Finkelstein's Delaware Law of Corporations and Business Organizations*, § 13.16 (4th ed. 2021) ("If a proper demand is made and refused, the board's decision will be protected unless it was 'wrongful,' *i.e.*, unless it was not the product of a valid exercise of business judgment . . .  A board may refuse a demand expressly or implicitly by not responding in timely fashion to the demand.").

[38] *Grimes*, 673 A.2d at 1219.

[39] *E.g., Kallick v. SandRidge Energy, Inc.*, 68 A.3d 242, 257 (Del. Ch. 2013) (describing the business judgment rule as "as close to non-review as our law contemplates"); *eBay Domestic Hldgs., Inc. v. Newmark*, 16 A.3d 1, 40 (Del. Ch. 2010) ("When the business judgment rule applies, the board's business decisions 'will not be disturbed if they can be attributed to *any rational business purpose*.'" (citing *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 720 (Del. 1971)) (emphasis added); 1 Robert S. Saunders et al., *Folk on the Delaware General Corporation Law* § 141.02[B][1], 4-114 (7th ed. 2021) ("Delaware's default standard of review is the business judgment rule, which has been described as a principle of 'non-review' . . . .").

Second, and relatedly, if a plaintiff is able to plead with particularity a reasonable doubt that a majority of the board can properly consider a demand, those pled facts will likely enhance the pleading of the underlying breach of fiduciary duty. Not so with the demand-refused complaint. Again, in making a demand, the stockholder has conceded the board's independence.[40] If that same board is comprised of members against whom the fiduciary duty breaches are alleged, the demand may well stand in tension with those underlying claims of breach. Thus, when a complaint that makes a bona fide attempt to plead demand futility is presented alongside a complaint that implicitly acknowledges the independence of the board, it makes sense to allow the demand futility allegations to be tested before addressing the demand-refused complaint. If the demand futility allegations survive the challenge, that finding alone will likely inform the court's determination of which plaintiff's team has made the better strategic decisions and is best suited to represent the interests of the company and its stockholders in the prosecution of the

---

[40] *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1988) ("By making a demand, a stockholder tacitly acknowledges the absence of facts to support a finding of futility."); *Rales v. Blasband*, 634 A.2d 927, 935 n. 12 (Del. 1993) ("Where a demand has actually been made, the stockholder making the demand concedes the independence and disinterestedness of a majority of the board to respond."); 2 Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 11.03[c][5][i], 11-120 (2d. ed. 2020) ("[B]y making a demand, the plaintiff stockholder has waived any ability to present a claim that the board is not in a position to consider and act upon the demand free of conflict.").

claims. If, however, the demand futility allegations are found wanting, by necessity, that will leave the demand-refused complaint as the only pleading left standing.

There may, of course, be instances where the demand futility allegations are only half-heartedly pled or are missing altogether. In such cases, the court would be justified in staying the purported demand-futility case in favor of the demand-refused case. This dynamic would also inform the court's determination of leadership as it would reveal that the demand-refused plaintiff's acknowledgement of board independence was likely justified and that the matter should turn, at the pleading stage at least, on that stockholder's ability to plead a basis to rebut the business judgment rule. In other words, the demand-refused complaint would best serve the interests of the corporation and its stockholders.

Here, the Court is satisfied that the demand-futility plaintiffs have made a bona fide attempt to plead demand futility on several potentially viable grounds. For reasons just explained, it is in the Company's best interest for those allegations to be vetted through pleading stage motion practice before determining whether Feuer's demand-refusal claims should proceed.

## III.  CONCLUSION

Based on the foregoing, Facebook's motion to consolidate the Feuer case with the now-consolidated demand-futility actions is DENIED.  The Feuer action is STAYED pending resolution of the motion(s) to dismiss the demand-futility claims.

**IT IS SO ORDERED**.