COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: August 29, 2019
Draft Report: July 31, 2019
Date Submitted: June 17, 2019

Victoria D. Chambers, *pro se*          James D. Chambers, *pro se*
3 Paxton Lane                           511 North Union Street, Apt. 3I
Bear, DE 19701                          Wilmington, DE 19805

Sheldon S. Chambers, *pro se*
1332 Goldeneye Drive
New Castle, DE 19720

Re:   *IMO the Estate of Evelyn Chambers*
      C.A. No. 2018-0630-SEM

Dear Litigants:

In this estate matter, two siblings filed a petition titled "Petition for Challenging Validity of a Will" naming their mother's estate and their third sibling, the current executor of their mother's estate, as respondents. The respondents' first motion to dismiss was granted, in part, dismissing the petitioners' challenges to the will's validity as time-barred but allowing other claims not addressed in the motion to dismiss to remain. The respondents have now moved for dismissal on the merits of the remaining claims. For the following reasons, I recommend that the second motion to dismiss be granted. This is my final report.

## I.     Background

As more fully developed in my March 26, 2019 Final Report,[1] which was adopted as an Order of this Court on April 11, 2019,[2] this estate matter boils down to a dispute between three siblings (Respondents Sheldon S. Chambers, Executor of the Estate of Evelyn Chambers, individually, and on behalf of the estate ("Respondents")[3] and Petitioners Victoria and James Chambers ("Petitioners")) as to the administration of their mother's estate.

In the petition filed on August 23, 2018, Petitioners raised concerns about the will admitted to probate[4] and averred that after he was appointed as executor, Sheldon breached his fiduciary duties, breached agreement(s) with Petitioners, and failed to reimburse James for funeral expenses.[5] The former was dismissed as time-barred but the latter remained, surviving the first motion to dismiss without prejudice to Respondents' ability to file a second motion to dismiss within twenty (20) days of my Final Report becoming an Order of the Court.[6] Respondents timely filed their second motion to dismiss on April 12, 2019 and the motion was fully briefed and

---

[1] Docket Item ("D.I.") 23.
[2] D.I. 25.
[3] I use first names in this final report for clarity and intend no familiarity or disrespect.
[4] *See, e.g.*, D.I. 1 ("Compl.") ¶ 4.
[5] *See id.* at ¶ 6
[6] D.I. 23.  Respondents' request for attorneys' fees and costs was also denied without prejudice but that request has not been renewed in the second motion to dismiss.

submitted for consideration on June 17, 2019.[7]  I issued my draft report on July 31,

2019, recommending dismissal, and no exceptions were filed pursuant to Court of

Chancery Rule 144.[8]  This final report makes the same findings and my

recommendations are unchanged.

## II.    Analysis

Pending before me is Respondents' second motion to dismiss.  Using the

forgiving eyes I urged Respondents to adopt in my first ruling, Respondents interpret

the *pro se* petition to include claims for (1) breach of fiduciary duty, (2) failure to

distribute non-probate assets, and (3) failure to pay for services rendered.  Because

---

[7] Petitioners also filed, on April 9, 2019, a document titled "Request for Production of Documents" addressed to Respondents and this Court.  D.I. 24.  Respondents answered the request via letter on April 18, 2019.  D.I. 28.  I interpret the former as requests for production under Court of Chancery Rule 34, the latter as a timely response thereto, and I decline to interject myself, *sua sponte*, into the parties' discovery efforts.  Further, to the extent discovery disputes are ripe (or ripening), such would be mooted by the recommended granting of Respondents' second motion to dismiss.

[8] Per Court of Chancery Rule 144(d)(1), notice of exceptions to my draft report were due by August 12, 2019.  On that date, the Court received a letter from Petitioners, dated August 7, 2019, explaining that Petitioners have requested medical records "to support their claims" and requesting additional time to receive and review those records before responding to "dismissal claims made by the Respondent and his previous counsel."  D.I. 37.  I interpreted the letter as a request for an extension of the August 12, 2019 deadline and issued an order on August 15, 2019 denying such request for lack of good cause.  D.I. 38.  Thereafter, Petitioners filed "Petitioners Response to Respondent's Motion to Dismiss", with a number of exhibits.  D.I. 39-43.  This filing is an untimely attempt to avoid dismissal based on numerous factual allegations outside the four corners of the petition and not properly before this Court for consideration.  *See infra* n.19.  It presents no basis for reconsideration of my draft report or August 15, 2019 order, even had it been timely filed.

Petitioners do not disagree with these characterizations and I, likewise, do not see any additional claims pled in the petition, I adopt them and address each in turn.

*A. Petitioners' Breach of Fiduciary Duty Claim Should Be Dismissed.*

Respondents argue that Petitioners' breach of fiduciary duty claim should be dismissed for failure to state a claim under Court of Chancery Rule 12(b)(6). The standards governing a motion to dismiss for failure to state a claim are well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[9]

"I need not, however, 'accept conclusory allegations unsupported by specific facts or … draw unreasonable inferences in favor of the non-moving party.'"[10]

"To plead a claim for breach of fiduciary duty, the Complaint must allege '(1) that a fiduciary duty exists and (2) that the fiduciary breached that duty.'"[11] In the probate context, executors, like Sheldon, stand as fiduciaries and "[t]he executor's duty is to carry out the wishes of the decedent as expressed in the will."[12] Executors

---

[9] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (internal quotation marks and citations omitted).

[10] *In re Straight Path Commc'ns Inc. Consol. S'holder Litig.*, 2018 WL 3120804, at *9 (Del. Ch. June 25, 2018), *aff'd sub nom. IDT Corp. v. JDS1, LLC*, 206 A.3d 260 (Del. 2019).

[11] *Howland v. Kumar*, 2019 WL 2479738, at *3 (Del. Ch. June 13, 2019).

[12] *In re Estate of Reichert*, 2001 WL 1398579, at *2 (Del. Ch. Oct. 31, 2001).

also owe a "duty of loyalty and care to the estate's beneficiaries"[13] which "is aimed at ensuring the proper administration of the decedent's estate."[14]

Petitioners allege that Sheldon, as executor, breached his fiduciary duties owed to the estate and Petitioners, as beneficiaries of the estate, by (1) selling the decedent's house and keeping the proceeds, (2) not communicating with Petitioners, and (3) failing to repay or reimburse James for funds he spent on the decedent's funeral. I find these allegations, even taken together, fail to state a cognizable claim.

First, Sheldon could not have breached his duties to the estate or Petitioners by selling the decedent's house and keeping the proceeds for himself. The will admitted to probate, and for which the time to challenge its validity has passed, specifically bequeaths the decedent's house to Sheldon.[15] Sheldon was charged with following through with that bequeath and his assumption of ownership and disposition of the property cannot form the basis of a breach of fiduciary duty claim.

Second, Petitioners' complaints about Sheldon failing to communicate with Petitioners and repay or refund the funeral expenses incurred by James are conclusory and too vague to support an inference that Sheldon breached his fiduciary

---

[13] *In re Estate of Farren*, 2015 WL 3797432, at *5 (Del. Ch. June 18, 2015).

[14] *Id.*

[15] *See In the Matter of Evelyn Chambers*, 168119 RR, D.I. 2. "Because the Register of Wills is a Clerk of the Court of Chancery, filings with the Register of Wills are subject to judicial notice." *Arot v. Lardani*, 2018 WL 5430297, at *1 n.6 (Del. Ch. Oct. 29, 2018) (citing 12 *Del. C.* § 2501; Del. R. Evid. 202(d)(1)(C)).

duties to either the Petitioners or the estate.[16]  Specifically, even assuming Sheldon

had a duty to communicate with Petitioners, Petitioners fail to allege what

information Sheldon failed to communicate to them or what inquires they made of

Sheldon that were unanswered (and for how long).[17]  Likewise, Petitioners fail to

allege that Sheldon affirmatively declined to repay or refund the expenses incurred

by James (i.e., in communications or by failing to list the repayment or refund as an

expense of the estate in an accounting) or that the estate has been administered and

the repayment or reimbursement was not provided, despite its priority to other claims

or expenses.[18]  Without this information, Petitioners' claim for breach of fiduciary

duty for failure to repay or reimburse James is, at best, premature and unripe.[19]

---

[16] *See RCS Creditor Tr. v. Schorsch*, 2017 WL 5904716, at *16 (Del. Ch. Nov. 30, 2017).

[17] *Cf. NHB Advisors, Inc. v. Monroe Capital LLC*, 2013 WL 6906234, at *4 (Del. Ch. Dec. 27, 2013) (explaining a trustee's duty to keep beneficiaries "reasonably informed of changes involving the trusteeship and about other significant developments concerning the trust and its administration" and finding unspecified alleged failures to communicate insufficient to support a breach claim) (internal citations and quotation marks omitted).

[18] Although Petitioners allege "[u]pon settlement of the estate … [Sheldon] failed to reimburse petitioner, James" and attach what they call a "Recapitulation" of the estate (Compl. ¶6, Ex. I), the allegation is in conflict with the Register of Wills docket (which reflects that the estate is still open) and the "Recapitulation" is, on its face, the summary page from the December 26, 2017 inventory of the estate and does not reflect final disposition of the estate. *See In the Matter of Evelyn Chambers*, 168119 RR, D.I. 35-36.

[19] *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004). Respondents contend that Sheldon has not refused to repay or reimburse James (D.I. 26) but, because Respondents' contention is outside the four-corners of the petition, I decline to rely upon it in addressing the motion to dismiss. *See White v. Panic*, 783 A.2d 543, 547 n.5 (Del. 2001) ("As a general rule, the Court of Chancery must confine its consideration on a motion to dismiss to the face of the complaint.").

### B. Petitioners' Claim for Failure to Distribute Non-Probate Assets Should Be Dismissed.

Respondents argue that Petitioners' claim for failure to distribute non-probate assets should be dismissed for failure to state a claim under Court of Chancery Rule 12(b)(6) and for lack of subject matter jurisdiction. I agree as to the former and, as such, decline to address the latter.

Petitioners' failure to distribute non-probate assets is, essentially, a breach of contract claim: Petitioners allege that Sheldon failed to split the proceeds from the sale of decedent's home (a non-probate asset that passed to Sheldon) with Petitioners, in equal shares, despite an agreement to do so. "[T]o survive a motion to dismiss for failure to state a breach of contract claim, [Petitioners] must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."[20] But, "[m]erely pleading that a breach of contract occurred, without alleging the existence of the contract, is not sufficient to state a valid claim."[21] Stated another way, if facts regarding the formation and existence of a contract are neither alleged, nor can be reasonably inferred from the pleadings, a

---

[20] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).
[21] *Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200, 1204 (Del. Ch. 1988).

breach of contract claim is insufficiently pled and cannot survive a motion to dismiss under Court of Chancery Rule 12(b)(6).

Petitioners failed to sufficiently plead that a contract was formed between them and Sheldon as to the sale proceeds. Rather, all Petitioners averred was that decedent "wanted the home sold and the proceeds distributed equally among the three children."[22] But no facts are alleged that could permit this Court to infer that a contract came into being and Sheldon breached its terms.[23] As such, the claim of breach of contract, or failure to distribute non-probate assets, should be dismissed.[24]

### C. Petitioners' Claim for Failure to Pay for Services Rendered Should Be Dismissed.

The final claim evident in the petition is one for failure to pay for services rendered. Like the failure to distribute, this claim is, essentially, a breach of contract

---

[22] Compl. ¶1. Although Petitioners argue that their mother "wanted her 3 children to divide up the proceeds equally amongst each other, to which we agreed[,]" (D.I. 29), such argument is outside the four-corners of the petition and, even if considered, fails to support a reasonable inference that a valid contract was formed. *See Griffin Corp. Servs., LLC v. Jacobs*, 2005 WL 2000775, at *4 (Del. Ch. Aug. 11, 2005) (declining to consider a factual allegation made for the first time in a responsive brief); *infra* n.22.

[23] *See Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014) ("A valid contract exists when (1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration.") (internal citations and quotation marks omitted).

[24] And, to the extent Petitioners' claim arises in equity (such as one for promissory estoppel), it must, likewise, fail because Petitioners failed to allege any promises or bad acts by Sheldon that would support the division of proceeds that Petitioners seek.

claim: Petitioners allege that Sheldon failed to pay for adequate care for their mother, despite an agreement to do so. This claim should be dismissed.

First, Petitioners fail to sufficiently allege the existence of a contract. Petitioners allege that Sheldon "agreed to care for her [(their mother)] at home."[25] This alleged agreement was to provide "care," says nothing about hiring and paying care providers, and fails to set forth the date of such agreement, the explicit terms of the agreement, and the consideration provided for the agreement.[26] Second, even if Petitioners had sufficiently alleged the existence of an agreement by Sheldon to provide "care" to their mother, they have failed to allege that Sheldon breached that agreement. The petition states, conclusively, that neither Sheldon nor decedent could afford to hire 24-hour care for the decedent.[27] Even accepting this as true, it is not reasonable to infer a breach of an agreement to provide "care" solely from an inability to pay for professional 24-hour care.[28] Thus, Petitioners' claim for failure to pay for services rendered should be dismissed.[29]

---

[25] Compl. ¶ 1.

[26] *See supra* n.22.

[27] Compl. ¶ 6.

[28] *See Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 109 (Del. 2013) (demonstrating that a breach-of-contract complainant must plead nonconclusory facts supporting an inference that the specific contractual duties owed to the complainant were breached).

[29] To the extent Petitioners' claim arises in equity (such as one for promissory estoppel), it must, likewise, fail because Petitioners failed to allege any promises or bad acts by Sheldon in connection with the care provided, or not provided, to their mother.

## III.    Conclusion

For the foregoing reasons, I find that Petitioners' remaining claims each fail to state a claim for which relief may be granted under Court of Chancery Rule 12(b)(6) and should be dismissed.  Accordingly, I recommend the motion to dismiss be granted.  This is my final report in this matter and exceptions may be taken in accordance with Court of Chancery Rule 144.

Respectfully,

*/s/ Selena E. Molina*

Master in Chancery