# COURT OF CHANCERY
# OF THE
# STATE OF DELAWARE

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 20, 2020

Blake A. Bennett, Esquire
Cooch & Taylor, P.A.
1000 West Street, 10th Floor
Wilmington, DE 19801

Raymond J. DiCamillo, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Eric Lopez Schnabel, Esquire
Dorsey & Whitney (Delaware) LLP
300 Delaware Avenue, Suite 1010
Wilmington, DE 19801

> RE:  *Mark Gottlieb, et al., v. Jonathan Duskin, et al.,*
>       Civil Action No. 2019-0639-MTZ

Dear Counsel,

I write regarding the motion to dismiss the Verified Class Action Complaint[1] (the "Motion") filed by Defendants Jonathan Duskin, Seth R. Johnson, Keri L. Jones, Kent A. Kleeberger, William F. Sharpe, III, Joel Waller, and Laura Weil (collectively, the "Director Defendants").[2]  I heard argument on the Motion on February 13, 2020.[3]  On May 27, I issued a partial ruling, holding that Plaintiff Mark

---

[1] Docket Item ("D.I.") 1 [hereinafter "Compl."].

[2] D.I. 17, 18.

[3] D.I. 42.

Gottlieb had pled facts sufficient to trigger enhanced scrutiny under *Unocal Corp. v. Mesa Petroleum Co.*[4] and that Plaintiff's claims, as pled, are derivative and not direct.[5]

To fully resolve the Motion, I asked the parties to submit supplemental briefing on two issues: (1) whether Plaintiff, having forwent demand, adequately pled facts demonstrating that demand is futile under Court of Chancery Rule 23.1, and (2) whether *Unocal* scrutiny is appropriate as Plaintiff primarily seeks money damages rather than injunctive relief.[6] The parties submitted supplemental briefing by August 24.[7] This letter completes my ruling on the Motion. I conclude that Plaintiff has failed to demonstrate that demand is futile under Rule 23.1. Therefore, the Complaint must be dismissed in its entirety, and I need not reach the question of whether *Unocal* scrutiny is appropriate for a post-closing damages action.

---

[4] 493 A.2d 946 (Del. 1985).

[5] *See* D.I. 47. Defendants B. Riley FBR, Inc. and B. Riley Financial, Inc. (together, the "B. Riley Defendants") also moved to dismiss pursuant to Rule 12(b)(6). *See* D.I. 19, 20. Their motion was not the subject of my partial ruling and remained pending during the resolution of the Director Defendants' Motion. In view of my determination that Plaintiff's claims are derivative in nature, the B. Riley Defendants joined the Director Defendants' arguments set forth in supplemental briefing. *See* D.I. 49. Accordingly, this letter decision resolves the Director Defendants' Motion, as well as the B. Riley Defendants' motion to dismiss.

[6] *See* D.I. 47.

[7] *See* D.I. 48, 49, 51, 52.

## I.   BACKGROUND[8]

The parties are familiar with the facts as alleged in the Complaint, which I related at length in my partial bench ruling.[9]  Generally, the Complaint alleges that the Director Defendants breached their fiduciary duties to Christopher & Banks (the "Company") "by engaging in [a] scheme to reject the $0.80 per share Offer for the Company by trying to bully the offeror to go away, and then when that failed[,] by commissioning the investment banker to prepare an analysis which was patently flawed and which made no sense, giving the Company values which it could not have had the analysis been done in good faith."[10]  It also alleges that the Director Defendants "failed in bad faith to fully inform themselves, and then negotiate with the Offeror to obtain a better bid."[11]  Plaintiff broadly contends that the Director Defendants did so to "entrench[] themselves at the expense of the Company's shareholders."[12]

---

[8] I draw the pertinent facts from the Complaint.

[9] *See* D.I. 47.

[10] Compl. ¶ 71.

[11] *Id.* ¶ 72.

[12] *Id.* ¶ 64(a).

Each of the Director Defendants served on the Board from the time of the transaction though the May 14, 2019 filing of the Complaint.[13] Assuming his claims were direct rather than derivative, Plaintiff did not make a pre-suit demand on the Company's board of directors (the "Board") prior to filing this action. Nor does the Complaint explicitly allege that demand is futile.

The Complaint provides a handful of allegations with respect to each of the Director Defendants.[14] Most of the Complaint's director-specific allegations are aimed at Jonathan Duskin.[15] Duskin has served on the Board since 2016. The Complaint describes Duskin's current and former roles in the industry and his allegedly "poor financial record" at other companies.[16] In addition, Duskin is the current CEO of Macellum Capital Management ("Macellum"). Macellum's "affiliate" is the Company's largest stockholder, owning 12.7% of its stock.[17]

Plaintiff alleges that Duskin "had been having conversations with" the offeror, Justin Yoshimura, "throughout th[e] year," was Yoshimura's first point of contact

---

[13] *See id.* ¶¶ 22–28.

[14] *See id.*

[15] *See id.* ¶¶ 22, 37, 38, 76(d).

[16] *Id.* ¶ 22.

[17] *Id.*

with respect to the bid,[18] and "arranged the retention of B. Riley, and was the initial contact with them."[19] Plaintiff further alleges that Yoshimura outbid the Company in a bankruptcy asset auction in 2018, which "may have created some ill will with defendant Duskin who is (as noted)" affiliated with "Christopher & Banks' largest shareholder."[20] Plaintiff stops short of alleging that Duskin was interested in the transaction or lacked independence with respect to it; rather, Count I requests that "[t]he Board should explore whether director Duskin has a conflict of interest and, if so, exclude him from further deliberations as to the Company's strategic alternatives."[21]

The Complaint's allegations with respect to the remaining Director Defendants are sparse. Plaintiff recites each director's Board tenure and general industry experience, but does not allege any interest in or connection to Duskin or the challenged transaction.

---

[18] *Id.* ¶ 37.

[19] *Id.* ¶ 38.

[20] *Id.*

[21] *Id.* ¶ 76(d).

- Paragraph 23: Seth Johnson has served on the Board since 2016 as "Macellum's designated board nominee" and has current and former experience in the industry.[22] The Complaint does not allege any direct connection between Johnson and Duskin, nor does it allege if or how Macellum influenced the challenged Board actions.

- Paragraphs 24 and 37: Keri Jones has been the CEO of the Company since March 2018 and has held other positions in the industry. Yoshimura's email offering the $0.80 "stalking horse bid" indicated he was "bullish on [Jones] and her turnaround plans."[23]

- Paragraph 25: Kent Kleeberger has served on the Board since 2016 and as its Chair since January 2017. He has an extensive professional history including service as an "independent consultant to certain private equity firms."[24]

- Paragraph 26: William Sharpe has served on the Board since May 2012, and has extensive experience, including serving as a partner at an investment banking firm and working for other entities that "provide[] advice on mergers and acquisitions, restructuring, and public and private capital raising to the middle market."[25] Plaintiff also alleges that "[t]he Company state[ed] in its 2019 Proxy: 'Mr. Sharpe brings considerable business, investment banking and corporate experience to our Board, given his more than 15 years as an investment banker.'"[26]

---

[22] *Id.* ¶ 23.

[23] *Id.* ¶ 37.

[24] *Id.* ¶ 25 (emphasis omitted).

[25] *Id.* ¶ 26 (emphasis omitted).

[26] *Id.* (emphasis omitted).

- Paragraphs 27, 33, and 35: Joel Waller served on the Board from January 2017 through June 2019. In addition to other industry experience, "Waller previously served as the Company's President, from December 2011 through November 2012, and as the Company's interim CEO from February 2012 through November 2012."[27] While serving as the Company's President and CEO in March 2017, he detailed the Company's struggle to successfully implement its long-term turnaround plan. And in March 2018, Waller stated that the Company was confident that it would realize the benefits of its turnaround plan that year.

- Paragraph 28: Laura Weil served on the Board from 2016 through June 2019, and has an extensive professional history, but has not been employed by the Company.

## II.    ANALYSIS

From these allegations, I assess whether Plaintiff has standing to pursue the derivative Complaint under Court of Chancery Rule 23.1. A stockholder's derivative claim may proceed only "if (i) the stockholder demanded that the directors pursue the corporate claim and they wrongfully refused to do so or (ii) demand is excused because the directors are incapable of making an impartial decision regarding the litigation."[28] Rule 23.1 requires a stockholder asserting a derivative claim to "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and the

---

[27] *Id.* ¶ 27.

[28] *United Food & Com. Workers Union v. Zuckerberg*, 2020 WL 6266162, at *7 (Del. Ch. Oct. 26, 2020) (citing *Ainscow v. Sanitary Co. of Am.*, 180 A. 614, 615 (Del. Ch. 1935)).

reasons for the plaintiff's failure to obtain the action or for not making the effort."[29]

It imposes "stringent requirements of factual particularity that differ substantially

from . . . permissive notice pleadings,"[30] and the Court will not accept conclusory

allegations as true.[31]

Where the plaintiff does not make a pre-suit demand, "the complaint must

plead with particularity facts showing that a demand upon the board would have

been futile."[32] The "operative question" is "whether demand is excused because the

directors are incapable of making an impartial decision regarding whether to institute

such litigation."[33] Viewing the constellation of allegations holistically, "the demand

futility analysis asks whether the board of directors as constituted when the lawsuit

was filed could exercise disinterested and independent judgment regarding a

---

[29] Ct. Ch. R. 23.1(a).

[30] *Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000).

[31] *Zuckerberg*, 2020 WL 6266162, at *8.

[32] *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 120 (Del. Ch. 2009) (citing Ch. Ct. R. 23.1(a), and also citing *Stone v. Ritter*, 911 A.2d 362, 367 n.9, and *Brehm*, 746 A.2d at 254); *see also Wood v. Baum*, 953 A.2d 136, 140 (Del. 2008) (noting that in the absence of a pre-suit demand "plaintiff must establish demand futility").

[33] *Zuckerberg*, 2020 WL 6266162, at *8 (internal quotation marks omitted) (quoting *Stone*, 911 A.2d at 367).

demand."[34]   When making this assessment, "a court counts heads," and "[i]f the board lacks a majority of directors who could exercise independent and disinterested judgment regarding a demand, then demand is futile."[35]

The Delaware Supreme Court has established two tests for determining whether directors can exercise independent and disinterested judgment regarding a demand:[36]  *Aronson v. Lewis*[37] and *Rales v. Blasband*.[38]  "The crux of the Court's inquiry is that set out by our Supreme Court in *Rales v. Blasband*:  whether the majority of the board, as it exists at the time the complaint is filed, is capable of considering the demand in light of the circumstances."[39]  "The *Rales* test requires that the plaintiff allege particularized facts establishing a reason to doubt that the board of directors could have properly exercised its independent and disinterested

---

[34] *Id.* (citing *In re infoUSA, Inc. S'holders Litig.*, 953 A.2d 963, 985 (Del. Ch. 2007), and also citing *In re Oracle Corp. Deriv. Litig.*, 2018 WL 1381331, at *18 (Del. Ch. Mar. 19, 2018)).

[35] *Id.* (citing *In re EZCORP Inc. Consulting Agreement Deriv. Litig.*, 2016 WL 301245, at *34 (Del. Ch. Jan. 25, 2016)).

[36] *See Wood*, 953 A.2d at 140.

[37] 473 A.2d 805 (Del. 1984).

[38] 634 A.2d 927 (Del. 1993).

[39] *Ryan v. Armstrong*, 2017 WL 2062902, at *10 (Del. Ch. May 15, 2017) (footnote omitted) (citing *Rales*, 634 A.2d at 934, and also citing *In re infoUSA, Inc.*, 953 A.2d at 985–90), *aff'd*, 176 A.3d 1274 (Del. 2017).

business judgment in responding to a demand."[40]  Although preceded by *Aronson*,

Delaware law has evolved to recognize *Rales* as the "general"[41] and "overarching

test for futility."[42]

Aronson has been regarded as *Rales*'s narrower and circumstance-specific

sister test, "appl[ying] to claims involving a contested transaction *i.e.*, where it is

alleged that the directors made a conscious business decision in breach of their

fiduciary duties"[43] and "[a]ddressing a situation in which the same directors who

would consider a demand had made the challenged decision."[44]  *Aronson* requires

that the plaintiff allege particularized facts creating a reason to doubt that (1) the

directors are disinterested and independent, or (2) the challenged transaction was

otherwise the product of a valid exercise of business judgment.[45]  In this case, all

Director Defendants sat on the Board both at the time of the challenged transaction

and when Plaintiff filed this action in May 2019.  *Aronson*'s test is the traditional

---

[40] *Wood*, 953 A.2d at 140 (internal quotation marks omitted) (quoting *Rales*, 634 A.2d at 934).

[41] *Zuckerberg*, 2020 WL 6266162, at *18 & n.20 (collecting cases).

[42] *Ryan*, 2017 WL 2062902, at *11.

[43] *Wood*, 953 A.2d at 140.

[44] *Zuckerberg*, 2020 WL 6266162, at *11.

[45] *Wood*, 953 A.2d at 140 (citing *Aronson*, 473 A.2d at 814).

choice, as "the suit involves a challenge to action of the directors who themselves would evaluate the demand."[46]

Consistent with this Court's decision to "decline[] automatic excusal theories[] in favor of individual director-by-director analysis based on the particularized allegations of the Complaint,"[47] "demand is not futile simply because enhanced scrutiny applies."[48] As Vice Chancellor Glasscock stated in *Ryan v. Armstrong*, "the presence of a narrowly pled *Unocal* claim . . . does not operate to excuse demand *per se*," "although of course *specific* pleadings that a majority of directors were motivated primarily by entrenchment or other non-corporate considerations will show demand futility."[49] The plaintiff's claims must be dismissed under Rule 23.1 "unless the Complaint demonstrates demand would be futile, consistent with the analyses set out in *Rales* and *Aronson v. Lewis*, regardless of whether the underlying facts state a claim under *Unocal*."[50]

---

[46] *Ryan*, 2017 WL 2062902, at *14 (citing *Aronson*, 473 A.2d at 814, and also citing *In re infoUSA, Inc.*, 953 A.2d at 986).

[47] *Id.* at *13 & n.138 (collecting cases).

[48] *Zuckerberg*, 2020 WL 6266162, at *12 (citing *Ryan*, 2017 WL 2062902, at *13–14).

[49] 2017 WL 2062902, at *13 (emphasis added).

[50] *Id.* at *14 (footnote omitted).

That said, where, as here, the complaint "alleges entrenchment as the Defendants['] motive in the challenged transaction," "[a]ddressing such an allegation under *Aronson* is a rather awkward fit."[51]   And *Aronson*'s continued viability in view of *Rales*'s more streamlined inquiry and intervening developments in the law has recently been called into question.[52]   "The *Aronson* test must be understood in the context of the overarching test for demand futility laid out in *Rales*:  could the directors bring business judgment to bear on the demand?"[53] Because both tests fundamentally address this question, *Aronson* and *Rales* inform each other and will almost certainly yield the same outcome when applied, and in fact, this Court has recognized the significant analytical overlap of these tests.[54]

---

[51] *Id.*

[52] *See Zuckerberg*, 2020 WL 6266162, at \*16 ("Viewed on its own terms, *Aronson* is no longer a functional test.  Delaware decisions have managed to continue applying it only by emphasizing the overarching question of a substantial likelihood of liability, incorporating the implications of exculpation, and de-emphasizing the role of the standard of review. The foundational premise of the decision, which relied on the standard of review for the challenged decision as a proxy for whether directors face a substantial likelihood of liability, no longer endures.  Fortunately, a viable alternative [, *Rales*,] exists.").

[53] *Ryan*, 2017 WL 2062902, at \*14 (footnote omitted) (collecting cases).

[54] *See, e.g.*, *Guttman v. Huang*, 823 A.2d 492, 500 (Del. Ch. 2003) ("[T]he differences between the *Rales* and the *Aronson* tests in the circumstances of this case are only subtly different, because the policy justification for each test points the court toward a similar analysis."); *see also Zuckerberg*, 2020 WL 6266162, at \*18–19 & n.20 (recognizing that general principles of demand futility set forth in *Aronson* are considered and applied, perhaps more efficiently, under *Rales*); *Ryan*, 2017 WL 2062902, at \*14 & n.143 (stating that *Aronson* is contextualized by *Rales* and collecting cases); *id.* at \*10–18 (specifically

Accordingly, I look to general principles of demand futility articulated by this Court under *Aronson* and its progeny, while keeping in mind *Rales*'s broader inquiry: I consider whether Plaintiff pled particularized facts showing that the Director Defendants face a substantial likelihood of liability such that they would have been incapable of exercising their independent business judgment in considering a demand.[55]

### A. Plaintiff Has Failed To Show Futility Under *Aronson* Prong One.

Under *Aronson*'s first prong, the Court considers "director compliance with the duty of loyalty: if the directors made the underlying decision under the influence of self-interest, or dependent on a third party, they have breached a duty of loyalty, and are liable for loss caused thereby."[56] Thus, I assess whether the Complaint pleads particularized facts sufficient to raise a reasonable doubt as to the disinterestedness or independence of at least half of the Director Defendants, such

---

applying *Aronson* to determine whether demand was futile in an entrenchment case, but doing so in view of *Rales*'s broader question and principles).

[55] *See, e.g.*, *Zuckerberg*, 2020 WL 6266162, at \*18–19 & n.20; *Ryan*, 2017 WL 2062902, at \*10–18; *Guttman*, 823 A.2d at 500. Even if *Aronson* is no longer viable, my analysis would be nearly identical to, and bear the same outcome as, a futility analysis under *Rales*.

[56] *Ryan*, 2017 WL 2062902, at \*14.

that the Director Defendants would face a substantial likelihood of liability.[57] Thus,

on a "director-by-director basis" the Court asks

> (i) whether the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand, (ii) whether the director would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand, and (iii) whether the director lacks independence from someone who received a material personal benefit from the alleged misconduct that is the subject of the litigation demand or who would face a substantial likelihood of liability on any of the claims that are the subject of the litigation demand.[58]

If the Complaint adequately alleges that the Director Defendants were conflicted

with respect to Yoshimura's bid, "there is a reasonable doubt whether those directors

can exercise their business judgment on a demand to sue themselves."[59]

The allegations with respect to each of the Director Defendants are scant at

best. Drawing all inferences in Plaintiff's favor, the Complaint only alleges that

Duskin might have a conflict of interest because of a prior experience that "may have

created some ill will" with Yoshimura.[60] The Complaint does not explain how this

---

[57] *Id.* at \*15; *see also Zuckerberg*, 2020 WL 6266162, at \*15 ("[A] plaintiff seeking to show that a director faces a substantial likelihood of liability for having approved a transaction, no matter what standard of review applies, must plead particularized facts providing a reason to believe that the individual director was self-interested, beholden to an interested party, or acted in bad faith.").

[58] *Zuckerberg*, 2020 WL 6266162, at \*19.

[59] *Ryan*, 2017 WL 2062902, at \*14.

[60] Compl. ¶ 38; *see also id.* ¶ 76(d).

potential ill will renders Duskin incapable of acting in accordance with his fiduciary duties.

Plaintiff offers no particularized allegations to establish that any other Director Defendant, let alone the majority, was interested in the transaction or beholden to Duskin. Instead, Plaintiff offers a conclusory and collective entrenchment theory, contending that the Director Defendants fended off the Yoshimura bid to preserve their positions, in view of Yoshimura's harsh words about the Board and management.[61] Plaintiff does not allege the Director Defendants' positions were material to them; does not allege any Director except Duskin had any animus towards Yoshimura; and does not allege their discretion was sterilized by Duskin's potential interest in fending off the bid.[62]

"This is quintessential conclusive pleading of a mere threat of liability."[63] "The Complaint is bare of the type of director-specific pleading" that shows a breach of loyalty and that "if true, create[s] a reasonable doubt that a substantial likelihood

---

[61] *See id.* ¶ 37 ("From our conversations throughout this year, I think we are in agreement that CBK possesses many underutilized assets, ranging from a loyal and engaged customer base to a platform that is able to succeed in tertiary malls. However[,] it goes without being said that under the current Board of Directors, the company has underperformed even its peers in every metric.").

[62] *See Ryan*, 2017 WL 2062902, at *15.

[63] *Id.*

of liability would cause a majority of directors to face liability, disabling their exercise of business judgment and excusing demand."[64] Because I cannot find from the facts alleged that the majority of the Director Defendants faces a disabling interest or lacks independence with respect to the demand eschewed by Plaintiff, Plaintiff has failed to plead facts demonstrating futility under *Aronson*'s first prong.[65]

> ### B. Plaintiff Has Failed To Show Futility Under *Aronson* Prong Two.

Plaintiff's futility arguments focus on *Aronson* prong two: a "safety valve to permit suit where the majority of directors are otherwise disinterested and independent but the complaint meets a heightened pleading standard of particularity and the threat of liability to the directors required to act on the demand is sufficiently substantial to cast a reasonable doubt over their impartiality."[66] I must assess whether the pleadings create a reasonable doubt that the decision was otherwise not the product of business judgment, such that it is reasonable to infer that the Director Defendants acted in bad faith and would therefore face a substantial likelihood of

---

[64] *Id.*

[65] *See id.* at *15–16.

[66] *Id.* at *17 (internal quotation marks omitted) (quoting *Guttman*, 823 A.2d at 500).

liability,[67] and "excuses demand where the facts pled disclose that rare case where a transaction may be so egregious on its face that board approval cannot meet the test of business judgment."[68] "[A] plaintiff carries a heavy burden in satisfying the second prong of *Aronson*,"[69] and must plead "particularized facts . . . such that it is difficult to conceive that a director could have satisfied his or her fiduciary duties."[70] If the Complaint demonstrates that Plaintiff has met this heavy burden with respect to at least half of the Director Defendants, "[s]uch directors are disabled from considering a demand to sue themselves, and demand would be futile."[71]

Plaintiff's allegations are insufficient to demonstrate that at least half of the Director Defendants could be found to have acted in bad faith and face a substantial likelihood of liability. "This is simply a mirror image of the contentions addressed with respect to *Aronson*'s first prong."[72] Plaintiff only alleges that Duskin may have

---

[67] *See id.* ("In order for demand to be excused under the second prong of *Aronson* where, as here, the Defendants are exculpated from liability for the duty of care, the Plaintiff must plead facts raising an inference that the action complained of was taken in bad faith.").

[68] *Id.* (internal quotation marks omitted) (quoting *Aronson*, 473 A.2d at 815).

[69] *Id.* (internal quotation marks omitted) (quoting *White v. Panic*, 783 A.2d 543, 551 (Del. 2001)).

[70] *Id.* (internal quotation marks omitted) (quoting *Chester Cty. Empls.' Ret. Fund v. New Residential Inv. Corp.*, 2016 WL 5865004, at *9 (Del. Ch. Oct. 7, 2016)).

[71] *Id.* at *14.

[72] *Id.* at *18.

harbored some animus toward Yoshimura that impacted his decision to reject the bid. And reading the Complaint in the light most favorable to Plaintiff, he suggests, but does not explicitly claim, that the remaining Director Defendants followed Duskin's lead by approving defensive measures and likewise rejecting the bid. Plaintiff offers no allegations regarding the Director Defendants' compensation and financial circumstances, or anything else to suggest that the Director Defendants, other than Duskin, would have a non-corporate motive in approving the transaction. Nor does the Complaint give rise to the reasonable inference that Duskin's influence "was so powerful as to sterilize the other directors' discretion or that such directors were beholden to him."[73] In view of these shortcomings, the Complaint fails to allege particularized facts to permit an inference that the majority of the Director Defendants acted with bad faith such that they face a substantial likelihood of liability.[74]

In the absence of particularized pleadings for each Director Defendant, Plaintiff alleges generally that the Director Defendants took defensive measures to fend off an allegedly hostile bid, not for the benefit of the Company, but for entrenchment. But Plaintiff's conclusory allegation that the Director Defendants

---

[73] *Id.*

[74] *Id.*

were collectively motivated by entrenchment is insufficient "to excuse demand *per se*."[75] Plaintiff must offer "specific pleadings that a majority of directors were motivated primarily by entrenchment or other non-corporate considerations."[76]

I previously held that "[a]s in *Ryan*, Plaintiff's allegations of an entrenchment motive are thin:" "Plaintiff conclusorily alleges that the director defendants entrenched themselves at the expense of the company shareholders."[77] However, the Complaint is silent as to each individual Director Defendant's "motivations, interests, and actions beyond its broad conclusory allegations" and "lacks particularized factual allegations to permit me to infer that the majority of the Board acted solely or primarily to entrench themselves."[78]

In the absence of particularized allegations that entrenchment primarily motived the decisionmakers such they acted in bad faith, Plaintiff contends that the transaction itself is so disloyal and in bad faith that it satisfies *Aronson*'s second prong.[79] Plaintiff asserts this case "smack[s]" of disloyalty,[80] such that this is a "rare

---

[75] *Id.* at *13; *see also id.* at *17 (finding that a "conclusory pleading" of an entrenchment motive "is insufficient under Rule 23.1").

[76] *Id.* at *13; *see also id.* at *17 (applying this principle).

[77] D.I. 47 at 21–22.

[78] *Ryan*, 2017 WL 2062902, at *17.

[79] *See* D.I. 51 at 13–15.

[80] *Id.* at 13.

case" where the challenged decisions are "so egregious"[81] that they are "inexplicable other than bad faith" and therefore it is "difficult to conceive that a director could have satisfied his or her fiduciary duties."[82] But Plaintiff's allegations do not support this conclusion.

In fact, although the challenged actions can be fairly characterized as defensive, the Complaint also repeatedly references the Company's long-term adherence to its turnaround plan.[83] Plaintiff alleges that the plan failed time and again, but the Board and management nonetheless remained optimistic about its promise.[84] And in March 2018, Waller announced the Director Defendants' belief that they "expect[d] the benefit of [the turnaround plan] to be largely realized in 2018."[85]

In November, Yoshimura approached Duskin with an "overture"[86] to "a stalking horse bid to acquire the company for at least ~$.80, which represents a ~33%

---

[81] *Ryan*, 2017 WL 2062902, at *17 (quoting *Aronson*, 473 A.2d at 815).

[82] *Id.* at *17 (internal quotation marks omitted) (quoting *Chester Cty. Empls.' Ret. Fund*, 2016 WL 5865004, at *9); *id.* at *18 ("An action inexplicable other than bad faith is sufficiently likely to imply liability that demand on directors taking such action is futile.").

[83] *See* Compl. ¶¶ 4, 7, 35, 37, 39.

[84] *See id.* ¶¶ 7, 35, 37, 39.

[85] *Id.* ¶ 35.

[86] *Id.* ¶ 39.

premium to today's closing price."[87]  Yoshimura ultimately engaged Duskin, his alleged foe, to kick off a sales process.  Yoshimura and the Director Defendants reacted by enacting a number of defensive measures.  Those included allegedly inflating projections and commissioning a "sham" report from B. Riley in order to fend off and rationalize rejecting the premium bid.[88]  In doing so, the Director Defendants—who have not been alleged to be interested or lack independence in this transaction—opted to stay the course in favor of the turnaround plan.

Even if the Director Defendants defended and rejected the bid for entrenchment purposes such that those actions (if supported by sufficient pleadings) would give rise to liability, the decision to reject the bid and stay the course on the turnaround plan is not so egregious as to be inexplicable other than by bad faith.  To the contrary, staying the course could likely have had a legitimate business purpose.[89]  As *Aronson* teaches, absent "rare" and "egregious" circumstances, "the

---

[87] *Id.* ¶ 37.

[88] *Id.* ¶¶ 12, 39, 43.

[89] *See Ryan*, 2017 WL 2062902, at *18 ("It is a truism that defensive actions may be loyal actions if reasonable.  They *may* also be loyal—although subject to injunctive relief—if unreasonable.  They may be loyal even though adopted in a grossly negligent way." (emphasis in original)).

mere threat of personal liability for approving a questioned transaction, standing alone, is insufficient."[90]

In defending his scant allegations, Plaintiff contends that the fact that they have triggered *Unocal* enhanced scrutiny means they are sufficient to excuse demand under *Aronson*'s second prong.[91] Boiled down, Plaintiff believes the standard of review, set on notice pleading standards, should dictate the outcome of the futility analysis under Rule 23.1's more onerous pleading standard.

The challenged conduct narrowly creates an inference sufficient to trigger *Unocal*'s enhanced scrutiny, but as explained, those are "not the only reasonable inferences that may be drawn from the timeline present here."[92] Plaintiff's bare-bones *Unocal* claim does not automatically translate into a non-exculpated duty of loyalty claim, and is not enough to satisfy the second prong of *Aronson*. The fact that a plaintiff has alleged the existence of defensive measures

---

[90] *Aronson*, 473 A.2d at 815.

[91] *See* D.I. 51 at 12–16.

[92] D.I. 47 at 27–28; *see Ryan*, 2017 WL 2062902, at *18 n.180 (considering in an *Aronson* prong two analysis that, although the challenged action triggered *Unocal* scrutiny, "the rationale of the [challenged action] was not completely devoid of support," as plaintiff alleged facts that also suggested a rational business purpose).

triggering *Unocal* enhanced scrutiny does not amount to a *per se* determination that the transaction is inexplicable other than by bad faith.[93]

In conclusion, the facts as pled do not support "an inference that the actions taken by the directors, even if defensive, are inexplicable other than as bad faith."[94] Accordingly, the Complaint does not give rise to a reasonable inference that the Defendant Directors face a substantial likelihood of bad-faith liability. Plaintiff has failed to satisfy the second prong of *Aronson*.

## III.   CONCLUSION

The Director Defendants' Motion, joined by the B. Riley Defendants, is **GRANTED**, and the Complaint is **DISMISSED** in its entirety for failure to satisfy Rule 23.1.[95] The parties shall submit an implementing order within twenty days of this decision.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

---

[93] *See Ryan*, 2017 WL 2062902, at *17–18; *accord Zuckerberg*, 2020 WL 6266162, at *15, *16 (noting that the applicable standard of review is not outcome-determinative for purposes of a futility analysis).

[94] *Ryan*, 2017 WL 2062902, at *18.

[95] *See id.* at *2.

MTZ/ms

cc:  All Counsel of Record via *File & ServeXpress*